*In re* MARRIAGE OF HORST ADLER, Petitioner-Appellant, and BRIGITTA ADLER, Respondent and Third-Party Plaintiff-Appellee (Joseph M. Giampa *et al.*, Third-Party Defendants-Appellants).

First District (4th Division) No. 1—94—1101

Opinion filed March 23, 1995.

Andrew B. Spiegel, of Wheaton, for appellants.

John F. Martoccio, of Hinsdale, for appellee.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

The petitioner, Horst Adler, and the third-party defendants, Joseph M. Giampa and Joe Giampa, filed the instant appeal seeking the reversal of an order of the circuit court which assessed $25,000 in sanctions against them pursuant to Supreme Court Rule 137 (134 Ill. 2d R. 137).

This action began on November 8, 1988, with the filing of a petition for dissolution of marriage. It proceeded rather unremarkably until June 1992 when the respondent, Brigitta Adler, filed a motion seeking a continuance of a scheduled trial date alleging that Horst Adler: (1) had dissipated in excess of $300,000 in marital assets; and (2) contrary to his discovery deposition testimony, owned an interest in the unimproved property commonly known as 511 Chicago Avenue in Lisle, Illinois (Lisle property).

Thereafter, Brigitta Adler filed an emergency petition for a temporary restraining order and preliminary injunction alleging that title to the Lisle property was held in trust with the Maywood Proviso State Bank under trust number 7938 (Maywood Proviso Trust) and that Horst Adler had transferred 50% of the beneficial interest in that trust to Joseph M. Giampa. Brigitta Adler requested that the Maywood Proviso Trust and Joseph M. Giampa be joined as third-party respondents and that they be enjoined from in any way transferring, pledging, or otherwise dealing with the beneficial interest of the trust pending further order of court. On August 7, 1992, the trial court entered an order granting the requested relief. The record reflects that the Maywood Proviso Trust was served on October 2, 1992, but Joseph M. Giampa was never served.

On November 4, 1992, the trial court entered a judgment dissolving the marriage of Horst and Brigitta Adler but reserved all other issues, including property division, for future determination. On the same day, in response to Brigitta Adler's emergency petition, the trial court also entered an order permitting Horst Adler to close on the sale of a parcel of real estate located at 10 West Bryn Mawr in Roselle, Illinois (Roselle property), but directing that the proceeds of that sale (Roselle proceeds) be placed in an interest-bearing escrow

account pending further order of court. The sale of the Roselle property closed on November 4, 1992.

On November 5, 1992, Horst Adler filed a motion to vacate the order of November 4, 1992, alleging that he was indebted to Joseph M. Giampa for monies borrowed for the purchase and rehabilitation of the Roselle property and that a real estate commission in the sum of $6,000 was owed to Maxim Plus Realty (Maxim) as a consequence of the sale of the property. As to the sums owed to Joseph M. Giampa, Horst Adler alleged that the debt was evidenced by three promissory notes bearing interest at the rate of 20% per year having a cumulative balance of $66,170.31 with interest continuing to accrue at the rate of $29.61 per day. On November 6, 1992, the trial court entered an order joining Joseph Giampa as a party respondent, permitting the payment of certain sums from the Roselle proceeds but not the amounts allegedly owed to Joseph M. Giampa and Maxim, and ordering that the remaining Roselle proceeds be placed in escrow at the First National Bank of Chicago.

On November 17, 1992, the attorney representing Horst Adler filed a special appearance for both Joseph M. Giampa and Maxim. Along with their special appearance, Joseph M. Giampa and Maxim filed an emergency petition seeking an order upon the First National Bank of Chicago to pay from its escrow the sum of $6,000 to Maxim for its real estate commission and the sum of $66,170.31 to Joseph M. Giampa. On December 22, 1992, Joseph M. Giampa and Maxim filed a document entitled "Motion to Quash" wherein they requested the entry of an order: "Sustaining [their] *** Special and Limited Appearance and their Emergency Petition to Release Real Estate Commission and Note Proceeds; *** Ordering disbursement of the note proceeds and real estate commission from the escrow account established at the First National Bank of Chicago ***; Awarding [them] *** all costs, expenses and attorney's frees [sic] incurred ***; and Granting Giampa such other and further relief as it deems just and equitable." On January 5, 1993, the trial court denied the "Motion to Quash."

It appears from the record that Joe Giampa, referred to in Brigitta Adler's pleadings as Joseph Giampa, did business under the name of Maxim and is the father of Joseph M. Giampa. Also, although not present in the record before this court, it is apparent that Brigitta Adler filed a petition seeking a declaratory judgment and other relief against Joseph M. Giampa and Joseph (Joe) Giampa because the record contains responses to such a petition filed on February 17, 1993, by Joseph M. Giampa and Joe Giampa, individually and d/b/a Maxim.

We find no need to recount the virtual torrent of petitions, counterpetitions, and motions filed by the parties to this action between June 1992 and September 1993 almost all of which were prefaced in their title with the word "Emergency." Suffice it to say that on October 1, 1993, the trial court entered an order providing for the distribution of various assets of the parties. Paragraph 11 of that order provides:

> "11. That Horst Adler and the third party defendants['] actions were an attempt to defraud the court with respect to the Lisle property and the Roselle proceeds and respondent is granted leave to file her fee petition against Joseph M. Giampa and Joseph Giampa. Petitioner and respondent are granted 30 days to file fee petitions against each other."

On November 8, 1993, Brigitta Adler filed a petition seeking an award of attorney fees and costs from Horst Adler pursuant to section 508 of the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/508 (West 1992)), and for sanctions against Joseph M. Giampa, Joseph Giampa, and Horst Adler pursuant to Supreme Court Rule 137 (134 Ill. 2d R. 137). On November 18, 1993, Horst Adler filed a petition seeking an award of attorney fees and costs from Brigitta Adler pursuant to section 508 of the Act. On January 24, 1994, the appellants filed a joint response to Brigitta Adler's fee and sanction petition. On February 23, 1994, the trial court denied both requests for fees pursuant to section 508, but entered a judgment pursuant to Rule 137 in favor of Brigitta Adler's attorney in the sum of $25,000 jointly and severally against Horst Adler, Joseph M. Giampa, and Joseph Giampa. Horst Adler and the Giampas filed a motion to vacate the order of February 23, 1994, which was denied on March 24, 1994. This appeal followed.

OPINION

In urging reversal of the judgment entered against them, the appellants argue that: (1) the trial court did not have personal jurisdiction over the Giampas; and (2) the trial court abused its discretion in entering any sanction pursuant to Rule 137 because (a) Brigitta Adler's petition upon which the sanction was based failed to specify any motion, pleading, or other paper which was not well grounded in fact or law; and (b) the trial court failed to specify the reason and basis for the sanction imposed.

■ We find the Giampas' jurisdictional challenge to be without merit. Section 2—301 of the Code of Civil Procedure provides that every appearance by a party, prior to judgment, for a purpose other than objecting to the personal jurisdiction of the court is a general

appearance. (735 ILCS 5/2—301 (West 1992).) Prior to any ruling on their jurisdictional challenge, Joseph M. Giampa and Maxim moved the court to grant affirmative relief in the form of orders to disburse escrow funds and for an award of attorney fees and costs. When a party requests affirmative relief prior to a ruling on his objections to the court's personal jurisdiction, he waives all objections to the court's *in personam* jurisdiction. (*Poplar Grove State Bank v. Powers* (1991), 218 Ill. App. 3d 509, 515, 578 N.E.2d 588.) Additionally, since the Giampas and Maxim never contended that they were not amenable to process issued by the courts of this State, by participating in these proceedings after the denial of their motion to quash, they waived all objections to the court's personal jurisdiction over them. 735 ILCS 5/2—301(c) (West 1992); *Bradshaw v. Pellican* (1987), 152 Ill. App. 3d 253, 504 N.E.2d 211.

■ Before addressing the propriety of the sanction order, we find it necessary to comment on the manner in which this litigation was conducted. We recognize that the trial of any contested action is difficult even under the best of circumstances and, due to the emotional considerations, the trial of a contested divorce action becomes even more difficult. One would not expect that a case such as this would take on the genteel air of high tea at the Savoy, but neither would one expect that it would degenerate to the level of invective found in this record. As shown by written submissions at the close of the evidence in this case, the attorney for the petitioner and the third-party defendants seems partial to pejorative terms such as "fantastic delusions," "delusional allegations," "delusional valuation," "squirreled away," "inane," "bamboozle," "duplicitous," "lie," "big lies," "brazen lie," "pathetic lie," "blatant lies," "pure rubbish," "utter rubbish," "preposterous," "chutzpah," "bogus," "absurd," and "pathetic fraud." For his part, the respondent's attorney seems enamored with terms such as "penurious," "systematic looting," "larcenous looting," "lies," "web of lies," and "perjures." Additionally, the respondent's attorney went so far as to prepare his closing submission to the trial court in the form of a four-act play divided into scenes with sarcastic subtitles. We are not impressed and we trust that the trial judge was not either. We commend to both counsel a quote from *Jackson v. Jackson* (1951), 343 Ill. App. 31, 61, 98 N.E.2d 169:

"We do not mean to ask for briefs barren of all literary zeal and pungency. What we suggest is that the condiment be used with discretion and not in doses that make the whole dish unpalatable."

We turn now to the legal issue before us, the propriety of the trial court's award of sanctions pursuant to Rule 137. Stripped of its

hyperbole, Brigitta Adler's petition for Rule 137 sanctions alleges that the appellants refused to comply with discovery requests, committed perjury during the course of the trial, falsely claimed that Horst Adler had no interest in the Lisle property, falsely claimed that the Roselle proceeds were subject to the payment of preexisting debts owed to Joseph M. Giampa and a real estate commission due Joseph (Joe) Giampa, and attempted to circumvent injunctive orders relating to the Roselle proceeds by filing a separate action in the circuit court of the 18th Judicial Circuit. The appellants filed a joint response to the petition denying the allegations contained therein, denying that the fees claimed were reasonable and necessary, and requesting that the petition be denied. The transcript of the hearing on the petition which was held on February 23, 1994, reveals that the trial court found that the appellants had engaged in bad-faith pleading, but did not specify to which pleadings it was referring. The appellants argued the veracity of their pleadings relating to the Roselle proceeds and again requested that the trial court specify those portions of the pleadings that were not presented in good faith. The court responded: "The whole pleadings and things that came in, I felt were pleadings with lack of good faith." When the hearing concluded, the trial court entered an order which provides in paragraph 2 thereof: "Judgment is entered in favor of John Martoccio and against Joseph Giampa and Joseph M. Giampa and Horst Adler, jointly and severally for $25,000 pursuant to Rule 137."

On March 1, 1994, the appellants filed their motion to vacate or modify the order of February 23, 1994. In that motion, appellants argued that the court's order failed to comply with the specificity requirement of Rule 137 and that the petition filed by Brigitta Adler failed to specify the pleading, motion, or other paper which she alleged violated the rule and which allegations therein she claimed to be false. The appellants moved the court to vacate its sanction order or, in the alternative, to modify it to comply with the specificity requirements of Rule 137. On March 24, 1994, the trial court denied the appellants' motion in its entirety.

■ Effective August 1, 1989, Supreme Court Rule 137 preempted section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—611). Since all of the events pertinent to Brigitta Adler's petition for sanctions against the appellants occurred subsequent to August 1, 1989, the proceedings before the trial court are governed exclusively by Rule 137. Rule 137 is penal in nature and its provisions must be strictly construed. (*Yassin v. Certified Grocers of Illinois, Inc.* (1990), 133 Ill. 2d 458, 551 N.E.2d 1319; *Shea, Rogal & Associates, Ltd. v. Leslie Volkswagen, Inc.* (1993), 250 Ill. App. 3d 149,

621 N.E.2d 77.) By its terms, the rule authorizes the imposition of sanctions against a party or his attorney for filing a pleading, motion, or other paper that is not well grounded in fact and warranted by existing law or which has been interposed for any improper purpose. An appropriate sanction may include an order to pay the other party's reasonable expenses, including reasonable attorney fees, incurred as a consequence of the offending pleading, motion, or other paper. (134 Ill. 2d R. 137.) Rule 137 does not authorize a trial court to impose sanctions for all acts of misconduct by a party or his attorney, only for the filing of pleadings, motions, or other papers in violation of the rule itself. (*In re C.K.* (1991), 214 Ill. App. 3d 297, 300, 573 N.E.2d 378.) Further, as a general sanction provision, Rule 137 is not properly used to sanction conduct such as discovery violations where other more specific sanction rules apply. *Diamond Mortgage Corp. v. Armstrong* (1988), 176 Ill. App. 3d 64, 71, 530 N.E.2d 1041; see also *Wadden v. Village of Woodridge* (1990), 193 Ill. App. 3d 231, 549 N.E.2d 1280; *Zaldivar v. City of Los Angeles* (9th Cir. 1986), 780 F.2d 823, 830.

■ When relief under Rule 137 is sought, the petition must meet certain specificity requirements. It must identify: (1) the offending pleading, motion, or other paper; (2) which statements in the document were false; and (3) the fees and costs that directly resulted from the untrue allegations. (*Plainfield Community Consolidated School District No. 202 v. Lindblad Construction Co.* (1988), 174 Ill. App. 3d 149, 528 N.E.2d 996; *Geneva Hospital Supply, Inc. v. Sanberg* (1988), 172 Ill. App. 3d 960, 527 N.E.2d 611.) Such specificity is necessary to afford the responding party an opportunity to challenge and defend the allegations alleged to be untrue and to enable the trial court to make a determination of the reasonable expenses incurred as a consequence thereof. *Brandel Realty Co. v. Olson* (1987), 159 Ill. App. 3d 230, 235, 512 N.E.2d 85.

■ Rule 137 is almost identical to section 2—611 of the Code of Civil Procedure which it preempted. One notable exception is the addition of the following mandate upon the trial court:

> "Where a sanction is imposed under this rule, the judge shall set forth with specificity the reasons and basis of any sanction so imposed either in the judgment order itself or in a separate written order." (134 Ill. 2d R. 137.)

Specific findings by the trial court are necessary to enable a reviewing court to make an informed and reasoned decision as to the propriety of a sanction order, and they form the predicate to the deference that reviewing courts accord the trial court's exercise of its discretion in such matters. (*North Shore Sign Co. v. Signature Design*

*Group, Inc.* (1992), 237 Ill. App. 3d 782, 604 N.E.2d 1157; *Bertuli v. Gaull* (1991), 215 Ill. App. 3d 603, 574 N.E.2d 1390; *In re Estate of Smith* (1990), 201 Ill. App. 3d 1005, 559 N.E.2d 571.) Also, as required under Rule 11 of the Federal Rules of Civil Procedure (Fed. R. Civ. P. 11), in addition to specifying the reasons and basis of any sanction imposed under Rule 137, the trial court must specify the manner in which it computed the sanction when the sanction is substantial. *Brown v. Federation of State Medical Boards* (7th Cir. 1987), 830 F.2d 1429; see *Edward Yavitz Eye Center, Ltd. v. Allen* (1993), 241 Ill. App. 3d 562, 608 N.E.2d 1285 (stating that this court may look to cases interpreting Rule 11 for guidance in interpreting Rule 137 because the rules are substantially similar).

In the case at bar, we find that: (1) Brigitta Adler's Rule 137 petition failed to specify which pleadings, motions, or other papers her request for sanctions was based upon; (2) the trial court's order of February 23, 1994, failed to specify the reasons or basis for imposing sanctions against the appellants as required by Rule 137; and (3) the transcripts of the proceedings before the trial court when it entered its sanction order and when it denied the appellants' motion to vacate or modify that order fail to identify either the specific pleadings upon which the sanction was based or the manner in which the sanction was computed. We also find from our examination of the record that the appellants never filed a motion to strike Brigitta Adler's sanction petition for lack of specificity, nor did they raise the issue in their written response to that petition. Instead, they filed a response addressing the merits of the petition. The first reference in the record to any objection by the appellants to the specificity of the sanction petition appears in the transcript of the arguments before the trial court on the day that the sanction was entered. It also appears from the transcript of that hearing that the appellants knew well that the pleadings and motions in issue were those relating to the Lisle property and the Roselle proceeds as their counsel was prepared to and did argue the veracity of those pleadings and motions.

■ Section 2—615 of the Code of Civil Procedure requires that "[a]ll objections to pleadings shall be raised by motion [which] *** shall point out specifically the defects complained of." (735 ILCS 5/2—615(a) (West 1992).) Supreme Court Rule 182(c) provides that "[a] motion attacking a pleading other than the complaint must be filed within 21 days after the last day allowed for the filing of the pleading attacked." (134 Ill. 2d R. 182(c).) Further, the best measure of the sufficiency of a pleading is whether the opponent is able to answer its essential allegations. (*People ex rel. Fahner v. Carriage Way West, Inc.* (1981), 88 Ill. 2d 300, 308, 430 N.E.2d 1005.) Since the

appellants never moved to strike the petition for sanctions, never raised any objection to the petition in their written response thereto, and responded to its allegations on the merits, we find appellants' objection to the specificity of the petition to be untimely and waived.

■ We cannot, however, intelligently review the trial court's assessment of sanctions against the appellants without the findings required under Rule 137. Consequently, although by our order we acknowledge that we are without a doubt "fanning the undying flame of this litigation" (*In re Marriage of Pitulla* (1990), 202 Ill. App. 3d 103, 116, 559 N.E.2d 819), we are compelled to vacate that portion of the trial court's order of February 23, 1994, which assessed sanctions against the appellants pursuant to Rule 137 and remand this case to the trial court with specific instructions to enter the findings mandated by Rule 137 even if that means the court is required to reopen arguments.

Vacated and remanded with directions.

CAHILL and THEIS, JJ., concur.