# Illinois Official Reports

## Appellate Court

---

## *Conner v. First Chicago Holdings, LLC*, 2021 IL App (1st) 200199

---

| | |
|---|---|
| Appellate Court Caption | CAROL CONNER and ALL UNKNOWN OCCUPANTS, Plaintiff, v. FIRST CHICAGO HOLDINGS, LLC, Defendant-Appellant and Cross-Appellee (Berton N. Ring, Appellee and Cross-Appellant). |
| District & No. | First District, Sixth Division No. 1-20-0199 |
| Filed | August 13, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2018-M1-134901; the Hon. Joel D. Buikema, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Brendan R. Appel, of Law Offices of Brendan R. Appel, LLC, of Northfield (Selwyn M. Skevin, of counsel), for appellant. Berton N. Ring, of Berton N. Ring, P.C., of Chicago, for appellee. |
| Panel | JUSTICE HARRIS delivered the judgment of the court, with opinion. Presiding Justice Mikva and Justice Oden Johnson concurred in the judgment and opinion. |

**OPINION**

¶ 1        Defendant, First Chicago Holdings, LLC (FCH), appeals the trial court's award of sanctions against appellee, Berton N. Ring, pursuant to Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018). On appeal, FCH contends that the trial court's award was error where it did not grant FCH the total amount of fees requested. FCH argues that it is entitled to all expenses and fees incurred as a result of Ring's filing of a frivolous lawsuit against it, and such an amount is commensurate with Ring's misconduct. In his cross-appeal, Ring contends that the court erred in imposing sanctions against him and in denying his motion for sanctions against FCH. For the following reasons, we affirm the trial court's judgment.

¶ 2                                    I. JURISDICTION

¶ 3        On January 13, 2020, the trial court entered its order granting FCH's petition for fees and expenses. FCH filed its notice of appeal on January 28, 2020, and Ring filed his notice of cross-appeal on February 6, 2020. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017), governing appeals from final judgments entered below.

¶ 4                                    II. BACKGROUND

¶ 5        In March 2014, plaintiff, Carol Conner, [1] leased an apartment located at 6022-24 S. Eberhart Avenue in Chicago, Illinois. The building was owned by Franklin Omene. In 2015, a foreclosure action was brought against Omene, and on June 20, 2017, a consent judgment of foreclosure was entered in favor of Byline Bank. Plaintiff was a tenant at the time of the judgment.

¶ 6        Byline Bank was granted immediate possession of the property, and pursuant to the court's order, title to the property was vested in Lily Pond LLC (Lily Pond), another entity of the bank. On May 22, 2018, Lily Pond conveyed the property by special warranty deed to JDA Holdings (JDA) for $10 "and other good and valuable consideration in hand paid by" JDA. Lily Pond sent plaintiff a letter on May 29, 2018, informing her of the sale to JDA. On September 8, 2018, JDA filed an eviction action against plaintiff.

¶ 7        On September 14, 2018, while the eviction action was pending, JDA conveyed the property to FCH by special warranty deed for $10 "and other good and valuable consideration."

¶ 8        On September 17, 2018, attorney Ring sent a demand letter to JDA, Lily Pond, and other parties on behalf of plaintiff. The letter stated that the property was covered by "Municipal Code of Chicago Section 5-15-010—Protecting Tenants in Foreclosed Rental Properties" and that plaintiff was "a *bona fide* tenant with a *bona fide* lease." As a result, plaintiff was "entitled to $10,400 plus attorney fees or a lease renewal." The letter also alleged "multiple Chicago Residential Landlord and Tenant Ordinance ('RLTO') violations." Ring demanded that the eviction case be dismissed, "or we will file the counterclaims and defenses which will only necessarily increase attorney fees."

_____

[1]Plaintiff's last name is also spelled Conor or Connor in various documents in the record. We will use Conner as that is the spelling used by plaintiff in her filings and by the parties in their briefs on appeal.

¶ 9 On September 25, 2018, counsel for JDA responded to the letter and stated that "JDA purchased the Property from [Lily Pond] on May 29, 2018 in an arms-length transaction, and is a bona-fide third party purchaser as that term is defined in the Protecting Tenants in Foreclosed Rental Property Ordinance" and therefore that ordinance "does not apply to JDA." On October 3, 2018, defendant FCH substituted for JDA in the eviction action as successor in interest.

¶ 10 On November 8, 2018, plaintiff through Ring filed an action against JDA, alleging one count of violating section 5-14-050(a)(3) of the Protecting Tenants in Foreclosed Rental Property Ordinance (Foreclosure Ordinance). Chicago Municipal Code § 5-14-050(a)(3) (amended Apr. 15, 2015). The complaint alleged that "Defendant was an 'Owner' within the meaning of § 5-14-020 of the" Foreclosure Ordinance. The complaint also alleged that "the Premises had not been sold or transferred to a 'Bona Fide-Third Party Purchaser' within the meaning of § 5-14-020 and § 5-14-030(b)" of the Foreclosure Ordinance. On November 21, 2018, plaintiff filed the underlying complaint against FCH, which was identical to the action filed against JDA. FCH was served with a summons and the complaint on December 3, 2018.

¶ 11 Meanwhile, on December 13, 2018, prior to trial in the eviction action, plaintiff entered into a settlement agreement whereby she agreed to vacate the property by January 22, 2019. At that time, FCH's counsel Selwyn Skevin spoke to Ring regarding a voluntary dismissal of plaintiff's complaint against FCH.

¶ 12 On December 27, 2018, plaintiff filed a motion for default against FCH, alleging that FCH "failed to answer or otherwise plead" in response to plaintiff's complaint. Between January 4 and 8, 2018, Skevin exchanged correspondence with Ring and asked him to dismiss the case. Ring asked Skevin for various documents, but Skevin refused to provide them. He told Ring that the documents could be "easily access[ed] through the Recorder of Deed's office *i.e.* we will not perform your due diligence for you." Skevin also reiterated that section 5-14-050(a)(3) "specifically excludes [FCH] as a *bona fide* third-party purchaser." Furthermore, FCH disputed that plaintiff met the statute's definition of tenant.

¶ 13 On January 23, 2019, FCH filed a motion to dismiss the complaint pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2018)). The trial court held a status hearing on January 28, 2019, and at that time it also granted FCH's motion for substitution of judge. The trial court ultimately dismissed plaintiff's complaint for want of prosecution when Ring intentionally did not appear for a status call on February 8, 2019. Apparently, plaintiff had failed to comply with the terms of the settlement agreement when she did not vacate the premises by January 22, 2019.

¶ 14 On February 28, 2019, FCH filed a motion for sanctions pursuant to Rule 137, based in part on the complaint's allegation that FCH was an owner under section 5-14-050(a)(3) and not a *bona fide* third-party purchaser at the time of foreclosure. FCH alleged that Ring "possessed notice and knew prior to filing the complaint that [FCH] was *** a *bona fide* purchaser and therefore exempt from prosecution and liability" under the section. FCH argued that even if Ring had believed FCH was the proper party when filing the complaint, a reasonable inquiry into the records of the foreclosure case and into the filings of the Cook County's Recorder of Deeds would have shown otherwise. FCH did not purchase the property at a foreclosure sale and "it was the second arms-length purchaser of the subject property after foreclosure proceedings." Therefore, "any and all allegations that [FCH] owed some sort of duty to Plaintiff(s) were categorically false."

¶ 15    Ring filed his opposition to motion for sanctions in which he argued that there was a question of whether FCH was a *bona fide* purchaser under the law. Ring also alleged that Skevin's filing of the motion for sanctions was itself sanctionable conduct.

¶ 16    On July 26, 2019, the trial court held a hearing on FCH's motion for sanctions. Relevant here, FCH argued that it was not an owner but a *bona fide* purchaser of the property that was exempt from the Foreclosure Ordinance. The complaint provided nothing to support its allegation that FCH was not a *bona fide* purchaser. As a result, plaintiff's allegation that FCH was an owner was false. Ring, however, responded that he "had suspicions about the connection between the parties" and argued that there was a question of whether FCH was a *bona fide* purchaser. He had asked FCH for "all closing documents to confirm that the parties are different among other factors." FCH, however, did not provide those documents to him. FCH argued that Ring "has not shown any reasonable inquiry *** as to why this case should have been filed in the first place. He wanted the evidence *** after having already filed [the case], which is not our obligation to do."

¶ 17    After the hearing, the trial court denied FCH's motion for sanctions. The court found that "the motion itself assumes that [FCH] is automatically a *bona fide* purchaser. Mr. Ring's Complaint assumes otherwise and lists the Landlord Tenant as well as the following [Foreclosure Ordinance]. And those two are in conflict. And there's a question of fact as to whether [FCH] was actually a *bona fide* purchaser."

¶ 18    FCH filed a motion to reconsider, arguing that the trial court erred in its application of Rule 137. FCH argued that the court improperly focused on whether there was a question of fact regarding FCH's assumption that it was a *bona fide* purchaser. Instead, it should have determined only whether Ring complied with his obligation under Rule 137 to conduct a reasonable inquiry into the facts to support his filing and not make false allegations without reasonable cause. FCH contended that it was presumed to be a *bona fide* purchaser under the law and Ring had a duty "to perform a reasonable inquiry to find facts to dispute the presumption *prior to* or at the time he filed the Complaint, but he failed to do so." Ring filed his opposition to motion to reconsider, and FCH filed a reply. The trial court held a hearing and granted FCH's motion to reconsider. The court also granted FCH leave to file its petition for fees within seven days.

¶ 19    On October 11, 2019, Ring filed his own motion for sanctions against FCH pursuant to Rule 137. His motion alleged three bases for sanctions where FCH's counsel falsely stated that (1) plaintiff did not have a lease or was not a *bona fide* tenant, (2) all members of an LLC or shareholders of a corporation are listed with the Secretary of State, and (3) Illinois Supreme Court rules in the 300 series only pertain to appeal and not to the trial courts. On October 18, 2019, Ring filed his opposition to defendant's petition for fees, and FCH filed a response.

¶ 20    On December 11, 2019, the trial court held a hearing on all pending matters. In its written order, the court found that "Attorney Berton Ring did not perform a reasonable inquiry before filing a complaint, that was not warranted by existing law, against the Defendant, [FCH], as it related to the single count based on" section 5-14-050(a)(3). The complaint alleged that FCH was an owner as defined in the Foreclosure Ordinance and, as such, was required to provide a letter to plaintiff advising her of its decision to either pay her a relocation fee or extend her lease. This allegation was "used as the foundation to file the underlying lawsuit."

¶ 21    The trial court found that Ring knew FCH was not such a purchaser of the property but was instead a subsequent purchaser. Thus, FCH could not be an owner as defined by the

Foreclosure Ordinance. The court determined that "[t]his failure to perform a reasonable inquiry before filing his complaint *** is the singular basis for a finding of sanctionable conduct." The court did not agree with FCH's other arguments of misconduct and therefore did not address them.

¶ 22    The trial court's order then determined the amount of fees FCH should receive as sanctions:

"This complaint was filed on November 21, 2018. [FCH] was served December 3, 2018 and the case ultimately was dismissed for want of prosecution on February 8, 2019. This case lasted a total of 68 days (from the date of service to dismissal) including 3 court appearances, one of which was on [FCH's] Motion (Substitution of Judge). Total attorney fees between December 3, 2018 and February 8, 2019 were $7,345.00. A majority of these fees, $4,622.50/16.7 hours were generated in preparing a Motion to Dismiss which was never heard.

Moreover, the attorney fees for the Motion to Dismiss may have been avoided if counsel for [FCH] would have responded with information to Plaintiff's prior requests for contract information regarding the sale of the property. Counsel for [FCH] requested Mr. Ring dismiss this lawsuit, but when asked to provide some documents from the sale of the property, counsel for [FCH] refused to provide any and moved forward drafting his Motion to Dismiss.

Of the total $33,249.41 in attorney fees and costs, counsel for [FCH] seeks $23,861.00 in fees and $1,247.51 in costs for pursuing this motion for sanctions. This court also finds these fees unreasonable based on the misplaced arguments where sanctionable conduct was not found, unnecessary and excessive pleadings and defense counsels [*sic*] refusal to provide any mitigating information in furtherance of dismissal of the case.

* * *

The Plaintiff's failure to pursue this case and even dismiss it on its own motion increased the cost of litigation, but FCH's failure to mitigate or even attempt to provide simple documentation prolonged and increased the cost of litigation as well. Since [FCH] did not include his fees or a Petition for Fees in his initial 137 Motion, additional court dates that followed, increased the cost of litigation which should not be attributed to the Plaintiff. Therefore, this Court will not grant any fees for the Defendant's pursuit of the 137 Sanctions. The request for such fees is not commensurate with the conduct being sanctioned, the time the case was pending, the refusal of [FCH] to provide documentation to the Plaintiff in furtherance of dismissal, the bifurcated 137 Motion/Petition for Fees and the amount of fees prior to dismissal."

¶ 23    The court determined that defense counsel's hourly rates were reasonable and that the fees between December 3, 2018, when FCH was served with the complaint, and February 8, 2019, when the case was dismissed for want of prosecution, were reasonable. Those fees totaled $2722.50. However, the court found the fees and costs related to the section 2-619 motion to dismiss excessive, given that plaintiff filed a four-page, one-count complaint. It therefore reduced the hours involving the motion to dismiss from 16.7 hours to 4 hours. The court awarded a total of $3822.50 in fees and $265.85 in costs to FCH "based on Mr. Ring's bringing this lawsuit without reasonable inquiry and not warranted by existing law."

¶ 24    FCH also sought $23,861 in attorney fees and $1247.51 in costs related to the filing of its motion for sanctions. Noting that the fees generated from the filing of the complaint to dismissal totaled $2722.50, the trial court found the $23,861 amount sought in pursuit of sanctions unreasonable. The court also denied FCH's request for $25,000 in punitive damages, finding that FCH provided no legal support for such damages. Lastly, it denied plaintiff's motion for sanctions and FCH's supplemental countermotion for sanctions against Ring. FCH filed this appeal, and Ring filed a cross-appeal.

¶ 25                                    III. ANALYSIS

¶ 26    We first consider Ring's contention on cross-appeal that the trial court erred in granting FCH's motion to reconsider and imposing sanctions against Ring. The purpose of a motion to reconsider "is to bring to the trial court's attention newly discovered evidence not available at the time of the first hearing, changes in the law, or errors in the previous application of existing law to the facts at hand." *River Village I, LLC v. Central Insurance Cos*., 396 Ill. App. 3d 480, 492 (2009). In its motion to reconsider, FCH argued that the trial court misapplied the law when it initially denied the motion for sanctions. We review whether the trial court erred in granting the motion to reconsider based on a misapplication of the law *de novo. Muhammad v. Muhammad-Rahmah*, 363 Ill. App. 3d 407, 415 (2006).

¶ 27    Rule 137 states that the attorney's signature on a pleading certifies "that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law *** and that it is not interposed for any improper purpose." Ill. S. Ct. R. 137 (eff. Jan. 1, 2018). If a pleading is signed in violation of this rule, the court may impose "an appropriate sanction." *Id.* Rule 137 was designed to prevent abuse of the judicial process by sanctioning parties who file vexatious and harassing actions based on unsupported allegations of fact or law. *Dismuke v. Rand Cook Auto Sales, Inc.*, 378 Ill. App. 3d 214, 217 (2007). Its purpose, however, is not to punish parties "simply because they have been unsuccessful in the litigation." *Burrows v. Pick*, 306 Ill. App. 3d 1048, 1050 (1999). Rather, "[t]he purpose of Rule 137 is to prevent the filing of false and frivolous lawsuits." *Sanchez v. City of Chicago*, 352 Ill. App. 3d 1015, 1020 (2004).

¶ 28    Plaintiff's complaint based her claim for damages on section 5-14-050(a)(3) of the Foreclosure Ordinance. The obligations set forth therein are those of "the owner of a foreclosed property." Chicago Municipal Code § 5-14-050(a)(1) (amended Apr. 15, 2015). An "owner" under this section is any person who is:

> "(1) pursuant to a judicial sale of a foreclosed rental property, the purchaser of the foreclosed rental property after the sale has been confirmed by the court and any special right of redemption has expired; or (2) a mortgagee which has accepted a deed in lieu of foreclosure or consent foreclosure on a foreclosed rental property." *Id.* § 5-14-020.

¶ 29    The complaint alleged that FCH was an "owner" as defined by section 5-14-20. FCH, however, did not fit the definition of "owner" since it did not purchase the property pursuant to a judicial sale, nor did it accept a deed in lieu of foreclosure. Lily Pond was the entity that accepted a deed in lieu of foreclosure. Although the complaint also alleged that FCH was not a *bona fide* third-party purchaser, that issue is not relevant to section 5-14-050. That provision, by its plain language, applies only to an "owner." Section 5-14-050(g) provides that "[t]he owner shall comply with this section until the foreclosed rental property is sold or otherwise transferred to a bona fide third-party purchaser." *Id*. § 5-14-050(g). If FCH was not a *bona fide*

purchaser, it still would not have been obligated under the provision because only the owner bears that responsibility until the property is in fact sold to a *bona fide* third-party purchaser. *Id.*

¶ 30 Upon reconsideration, the trial court found that "[c]learly, FCH was not an 'Owner' as defined by the [Foreclosure Ordinance] and Attorney Ring knew that FCH was a subsequent purchaser of the property to JDA." Rule 137 requires an attorney to make a reasonable inquiry into the facts supporting a claim before filing the complaint. *Ashley v. Scott*, 266 Ill. App. 3d 302, 305 (1994). By signing the complaint, Ring asserted that "the claim had been reasonably investigated and was based on fact." *Id.* at 306. The court concluded that Ring failed to perform a reasonable inquiry as to this allegation before filing the complaint. It considered this failure "the singular basis for a finding of sanctionable conduct." We find that the trial court did not err in granting the motion to reconsider or in finding, upon reconsideration, sanctionable conduct on the part of Ring.

¶ 31 As sanctions, the trial court awarded FCH $3822.50 in fees and $265.85 in costs "based on Mr. Ring's bringing this lawsuit without reasonable inquiry and not warranted by existing law." FCH, however, requested fees and costs amounting to $33,249.41. On appeal, FCH contends that the trial court should have awarded the entire $33,249.41 because FCH was entitled to all of the fees and costs incurred as a result of the filing of plaintiff's complaint.

¶ 32 Pursuant to Rule 137, the trial court is authorized to impose sanctions "only for the filing of pleadings, motions, or other papers in violation of the rule itself." *In re Marriage of Adler*, 271 Ill. App. 3d 469, 476 (1995). Thus, when relief is sought under Rule 137, the motion must identify not only the improper allegation but also the fees and costs that directly resulted from the false allegation. *Id.* Such specificity enables the trial court to determine "the reasonable expenses incurred as a consequence thereof." *Id.* When considering the propriety of Rule 137 sanctions, we determine "whether the trial court's decision was informed, based on valid reasoning, and follows logically from the facts." *Technology Innovation Center, Inc. v. Advanced Multiuser Technologies Corp.*, 315 Ill. App. 3d 238, 244, 247 (2000). We review the propriety of the trial court's sanction order for abuse of discretion. *Adler*, 271 Ill. App. 3d at 476.

¶ 33 The trial court considered three categories of fees FCH requested as sanctions: (1) fees and costs related to the proceedings on plaintiff's complaint, (2) fees and costs from proceedings regarding FCH's motion for sanctions, and (3) punitive sanctions. We review each category in turn.

¶ 34 First, the trial court found that FCH was entitled to fees and costs incurred from the date FCH was served with the complaint, December 3, 2018, to February 8, 2019, when the complaint was dismissed for want of prosecution. FCH claimed $7345 in fees for this period. The court found, however, that the majority of these fees ($4622.50) "[was] generated in preparing a Motion to Dismiss which was never heard." The trial court reduced the hours submitted for the motion to dismiss from 16.7 hours to 4, given that plaintiff filed a one-count, four-page complaint. It further noted that the fees connected with the motion to dismiss "may have been avoided" if FCH's counsel had provided information requested by Ring regarding the sale of the property. Instead, counsel "refused to provide any and moved forward drafting his Motion to Dismiss."

¶ 35 For these reasons, the court allowed $1100 of the $4622.50 FCH requested in fees related to the motion to dismiss. Accordingly, the court added $1100 to the remaining $2722.50 in

fees for this period for a total of $3822.50 in fees. In determining an appropriate award of attorney fees, the trial court may use its knowledge and experience to ascertain the time required to complete a particular task, and this court will not reverse an award merely because we could have reached a different conclusion. *U.S. Bank National Ass'n v. Randhurst Crossing LLC*, 2018 IL App (1st) 170348, ¶ 78. We find no abuse of discretion in the trial court's award of fees and costs incurred from December 3, 2018, to February 8, 2019.

¶ 36 FCH next contends that the trial court erred in refusing to award $23,861 in attorney fees and $1247.51 in costs related to the Rule 137 sanctions proceedings. It is true that a party may recover fees incurred in pursuing a motion for sanctions. *Robertson v. Calcagno*, 333 Ill. App. 3d 1022, 1028 (2002). However, just because the trial court may impose a sanction does not mean it is required to do so. *Lake Environmental, Inc. v. Arnold*, 2015 IL 118110, ¶ 15. Furthermore, a sanction imposed under Rule 137 must be "appropriate." Ill. S. Ct. R. 137 (eff. Jan. 1, 2018). An appropriate sanction is one that is "reasonable in light of the attendant facts and circumstances of the case." *Smith v. City of Chicago*, 299 Ill. App. 3d 1048, 1054 (1998).

¶ 37 The trial court found that the $23,861 in attorney fees and $1247.51 in costs sought by FCH was not an appropriate sanction. The court reasoned that FCH's conduct also "prolonged and increased the cost of litigation" by not providing Ring with requested documentation. Furthermore, FCH's failure to include a petition for fees in the motion for sanctions necessitated additional court dates, the costs of which "should not be attributed to the Plaintiff." Significantly, Ring was sanctioned only for his failure to perform a reasonable inquiry before filing the complaint, which was the trial court's "singular basis for a finding of sanctionable conduct." The trial court found the amount of fees sought for prosecuting the sanctions motion unreasonable because the motion was largely premised on "misplaced arguments where sanctionable conduct [by Ring] was not found." The trial court therefore denied FCH's request for these fees where they were "not commensurate with the conduct being sanctioned, the time the case was pending, the refusal of [FCH] to provide documentation to the Plaintiff in furtherance of dismissal, the bifurcated 137 Motion/Petition for Fees and the amount of fees [incurred] prior to dismissal." An abuse of discretion occurs only if no reasonable person could agree with the trial court's ruling. *Id.* We cannot say that no reasonable person could agree with the trial court's determination.

¶ 38 FCH, however, cites *Ashley*, *Dayan v. McDonald's Corp.*, 126 Ill. App. 3d 11 (1994), and *Rios v. Valenciano*, 273 Ill. App. 3d 35 (1995), as support for its argument that it was entitled to the entire $33,249.41 in fees and costs requested, where they resulted from Ring filing the baseless complaint. These cases are distinguishable.

¶ 39 The bulk of total fees sought by FCH related to its motion for sanctions, and as set forth above, the trial court found those fees unreasonable. The movants in *Ashley* and *Rios* did not request fees for filing the motion for sanctions. They requested only fees and costs incurred in proceedings related to the baseless pleadings, and here the trial court awarded those fees and costs to FCH. *Dayan* did involve a request for fees and costs related to the motion for sanctions. This court in *Dayan* upheld the trial court's imposition of those fees and costs because the false allegations "spawned this entirely unnecessary litigation." *Dayan*, 126 Ill. App. 3d at 28. Importantly, the *Dayan* court emphasized that "there is no indication that this portion of the award is excessive or unreasonable." *Id.* Unlike *Dayan*, the trial court below found that an award of fees and costs incurred in pursuing sanctions was unreasonable. For these reasons, *Ashley*, *Rios*, and *Dayan* are inapposite.

- 8 -

¶ 40    FCH also sought punitive sanctions in the amount of $25,000, which the trial court denied because it found FCH provided no legal support for such damages. FCH, however, contends that punitive sanctions are allowed under Rule 137 if they are "an appropriate sanction." Ill. S. Ct. R. 137 (eff. Jan. 1, 2018). Whether Rule 137 authorizes punitive sanctions is a question we need not answer here because, even if Rule 137 allowed such sanctions, they would not be appropriate in this case.

¶ 41    It is long established in Illinois that courts may award punitive damages when a party "acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others." *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 186 (1978). Punitive damages are penal in nature, acting as a punishment and deterrent. *Id.* However, such damages are not favored "and should only be allowed with caution and confined within narrow limits." *Embassy/Main Auto Leasing Co. v. C.A.R. Leasing, Inc.*, 155 Ill. App. 3d 427, 432 (1987).

¶ 42    Here, Ring was sanctioned for the statement in plaintiff's complaint that FCH was an owner under the Foreclosure Ordinance. Although FCH argues that Ring's sole purpose in filing the complaint was to gain an advantage in the eviction proceedings, thus justifying punitive sanctions, the trial court made no such finding. Instead, the trial court took "notice of the timing of this complaint as it relates to the parallel eviction case which was proceeding at the same time between the same parties," but ultimately found that Ring's "failure to perform a reasonable inquiry *** [was] the singular basis" for sanctionable conduct. It found FCH's other arguments of Ring's misconduct to be without merit. Furthermore, the proceedings on the complaint lasted only 68 days, with three court appearances, before the complaint was dismissed. Nothing in the record supports a finding of willful or wanton misconduct that would justify the imposition of exemplary damages. The trial court was correct to deny such sanctions under these circumstances. See *Deal v. Byford*, 127 Ill. 2d 192, 203 (1989) (since punitive damages are penal in nature, "courts must be cautious in seeing that they are not improperly or unwisely awarded").

¶ 43    The final contention we address concerns Ring's request for sanctions against Skevin. In his cross-appeal, Ring argues that the trial court should have imposed sanctions against FCH's counsel for stating in their motion for sanctions that plaintiff did not have a lease or was not a *bona fide* tenant, and all members of an LLC or shareholders of a corporation are listed with the Secretary of State. Ring also argued that FCH's counsel should have been sanctioned for seeking punitive sanctions.

¶ 44    We emphasize that even had the trial court found these statements to be false, it was not required to impose sanctions as a result. *Lake Environmental*, 2015 IL 118110, ¶ 15. Moreover, the purpose of Rule 137 is to prevent the filing of frivolous claims. *Sanchez*, 352 Ill. App. 3d at 1020. FCH's motion for sanctions was not frivolous as evidenced by the fact that the trial court did impose sanctions pursuant to the filing. Although the trial court did not find all the allegations therein meritorious, including the claim for punitive sanctions, we cannot conclude that sanctions should have been imposed against FCH as a result. The purpose of Rule 137 is not to punish parties "simply because they have been unsuccessful in the litigation." *Burrows*, 306 Ill. App. 3d at 1050.

¶ 45                              IV. CONCLUSION

¶ 46          For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 47          Affirmed.