(No. 30505.—

SKELGAS COMPANY *et al.*, Plaintiffs in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(HAZEL M. WEYMOUTH, Admx., Defendant in Error.)

*Opinion filed May 20, 1948.*

C. L. SWIM, of Tulsa, Okla., and KLOHR & MERRICK, of Chicago, (HUBERT C. MERRICK, of counsel,) for plaintiffs in error.

HAL M. STONE, and CHALMER C. TAYLOR, both of Bloomington, for defendant in error.

Mr. JUSTICE WILSON delivered the opinion of the court:

Hazel M. Weymouth filed an application for adjustment of claim against Skelgas Company, alleging the death, on February 3, 1939, of her husband, Carl F. Weymouth, as a result of an injury arising out of and in the course of his employment. An arbitrator awarded compensation, the Industrial Commission sustained the award, and the circuit court of McLean County confirmed the decision of the commission. We have allowed the employer's petition for a writ of error, and the record is submitted for a further review.

The sole question requiring consideration is whether Carl F. Weymouth was an employee of Skelgas Company on February 3, 1939. The term "employee," as used in the Workmen's Compensation Act, is construed to mean: "Second—Every person in the service of another under any contract of hire, express or implied, oral or written, * * *." Ill. Rev. Stat. 1947, chap. 48, par. 142.

The application for compensation benefits describes the nature of the work in which Weymouth was engaged at the time of the accident and cause of the accident, as follows: "Salesman for respondent. Death resulted from collision between car which deceased was driving and truck operated by Adams Transfer & Storage Co. of Kansas City, Mo." A stipulation of facts discloses that Weymouth was first employed by Skelgas Company on November 3, 1933, and that, between July 1, 1935, and January 31, 1939, he was so employed as a wholesale salesman. Injuries suffered by Weymouth in an automobile accident on March 15, 1938, prevented him from working until April 16, 1938. These injuries arose out of and in the course of his employment. The employer paid Weymouth his regular salary during the period of March 15 to April 16,

1938, inclusive, taking credit for $15 weekly as compensation paid under the statute. On May 23, 1938, Weymouth executed a "Final Report and Settlement Receipt," also described as Form 85, and mailed it to the commission on May 25. This form showed the payment and receipt of $66.42 for temporary total disability and $203 for hospital and medical services. By a letter dated May 17, 1938, C. L. Swim, manager of the liability department of Skelgas Company, informed Weymouth of his right to file a claim for any permanent disability within one year from the date of filing Form 85, saying, "Before a year goes by after you have signed this you should consider whether or not you have any permanent disability and if so bring it to my attention and if we fail to get together within a year from the time this Form 85 is signed and you feel that you have such a claim, then you should file your claim before the Industrial Commission at Chicago." The correspondence discloses that about January 1, 1939, the company decided to transfer Weymouth from his previous territory in Illinois to a new territory in Iowa. A letter dated January 4, 1939, from the company, signed by W. W. Overman, an assistant to the sales manager, says, in part: "It will be impossible for us to advance you the money to pay your obligations as this is a personal matter with you. We will hold the territory open for a few days in order to have you make up your mind if you care to make the change to Iowa. Your successor will, in all probability be in the territory the first of the coming week and by that time I hope you will have made up your mind what you expect to do." On January 12, Weymouth answered by advising the company, "It will be impossible for me to take any new set up for a while—Exray pictures show that my breast bone has never knitted—is lapped—Waiting now for word from bone specialist to determine if they can go in a scrape bones, raise and sew with wire the under side is pressing on my heart and lungs—if they de-

cide they can raise and eliminate my chest trouble I will be in hospital some time. Have been taking treatments as per Mr. Swim,—Tulsa Office since October—Will submit report to him as soon as bone specialist sends his report. All this due to accident last March. Will give Black [Weymouth's successor] all help I can after he arrives until I enter hospital." Weymouth received a reply, dated January 16, from G. W. Bach, sales manager, stating that his letter of the twelfth was being passed on to Swim who would report any further recommendations or comments. The next day, January 17, Swim answered Weymouth's letter of January 12. He said, "I trust that you will not put yourself in the hands of a surgeon or go to a hospital without letting me have a chance to consult with you on that point. * * * In any event please do not incur obligations of this nature without my approval."

On January 26, Swim again wrote to Weymouth acknowledging a letter of January 22 and the report sent from two doctors. This letter and the medical report were not introduced in evidence. Swim's letter states that the reports were helpful but that he did not have as clear an understanding as he desired regarding the cause of Weymouth's trouble and what change, if any, the doctors expected would develop in the future. Swim added, "For that reason if you can I should like for you to go to Dr. George W. Stephenson, * * * Bloomington, Illinois, and take him all x-rays you have, as well as any other information you have that will be helpful to him. This examination will be at our expense. * * * When I have had a report from this doctor I shall endeavor to let you hear from me promptly." On January 27, Weymouth replied that he would report to Dr. Stephenson on Monday, January 30. Stating that he had obtained the opinion of eight doctors, all of whom were of the same opinion, Weymouth continued, "I am more interested in being well and able to work than anything else. I left the hospital long

before I should have & went to work. I drove a car until Oct.—when I could not pull the steering wheel with my left arm—because I like the Company and wanted to be as easy as possible on them—& felt I would be able to continue, but have steadily grown worse." On the same day, Bach wrote Weymouth, saying, to the extent pertinent, "We will have someone contact the territory beginning next month, so your present set up will be terminated as of January 31, and after you get back on your feet we will work out some sort of a set up for you." On February 1, Weymouth wrote another letter to Swim saying, "I expected to visit Dr. Stephenson Monday, but a big blizzard has had highways blocked. Will try to make it down Friday. Have a letter from Mr. Geo. Bach, that my present set up terminated last night, January 31st. Said he did not know how compensation worked but you would explain. So Starting Feb: 1st I would automatically go on compensation."

On Friday, February 3, 1939, Weymouth, accompanied by guests, drove from his residence in Chatsworth to Bloomington where he called at the office of Dr. Stephenson about 9:30 A.M. Dr. Stephenson made a physical examination, commencing about 10:30 A.M. and lasting until noon. The doctor then sent Weymouth for further examination to two other doctors in Bloomington and thereafter Weymouth returned to the office of Dr. Stephenson who completed the examination at 4:00 P.M. Insofar as Skelgas Company was concerned, Weymouth made the trip to Bloomington for the sole purpose of submitting to an examination by Dr. Stephenson and such associates as he might select. While returning from Bloomington to Chatsworth, after having driven twenty-two miles, Weymouth was killed in an automobile accident approximately two miles south of Chenoa.

The challenged claim for compensation is based entirely upon the fatal accident of February 3, 1939. Admittedly,

Weymouth sustained an accidental injury on March 15, 1938, arising out of and in the course of his employment. The facts recounted disclose that, incident to the accidental injury of March 15, 1938, the employer furnished hospital and medical services for Weymouth, and paid him his regular salary during the period of his temporary total disability, taking credit for a portion, as compensation payments. The application does not allege, nor is it claimed now, that the earlier accident caused or resulted in the death of Weymouth on February 3, 1939. In short, neither the extent of Weymouth's injuries sustained on March 15, 1938, nor the cause of those injuries are in controversy. The narrow question presented is, hence, whether Weymouth was employed by Skelgas Company on February 3, 1939, within the contemplation of section 5 of the Workmen's Compensation Act.

From the stipulated facts it appears that for three years and seven months prior to and including January 31, 1939, Weymouth was employed in the capacity of a wholesale salesman. About January 1, 1939, the employer informed Weymouth of its decision to transfer him to a new assignment in Iowa. Weymouth replied that his physical condition rendered him unable to take a new territory. Further correspondence culminated in the letter of the sales manager of the oil company, dated January 27, 1939, informing Weymouth that his present employment would be terminated as of January 31. The latter acknowledged this letter and did not question either the termination of his services as an employee or the date of termination. Undisputed facts impel the conclusion that Weymouth's employment terminated as of January 31, 1939, and, in consequence, on February 3, 1939, he was not an employee of the Skelgas Company. This being so, it follows necessarily that the accident resulting in his death was not compensable under the Workmen's Compensation Act.

In *Waters* v. *Industrial Com.* 349 Ill. 214, the claim-

ant's services as an employee of the County of Cook terminated December 31, 1929. He was injured on March 5, 1930, when he went to the comptroller's office to obtain his last pay voucher. While going down a stairway he fell and was injured. Observing that at the time of his injury Waters was not an employee of the County of Cook, this court said, "On March 5, 1930, when he was injured, he was not performing any work for the county of Cook but was leaving the building after cashing his check for past services rendered. Unless the employee is performing some act or duty for the employer under the contract and within the period of his employment at the time of the injury he can not recover." Similarly, in the present case, Weymouth was not performing any work for Skelgas Company on the day he was fatally injured. Indeed, he himself had written that he was physically unable to perform any service to the company because of his injuries and, later, he wrote a letter stating that he had been notified of the termination of his employment on January 31, 1939, "So starting Feb: 1st I would automatically go on compensation."

Section 12 of the Workmen's Compensation Act gives the employer the right to have a medical examination of an employee entitled to disability payments "for the purpose of determining the nature, extent and probable duration of the injury received by the employee, and for the purpose of ascertaining the amount of compensation which may be due the employee from time to time for disability." (Ill. Rev. Stat. 1947, chap. 48, par. 149.) This section provides, further, that if the employee refuses to submit to an examination his right to compensation payments shall be temporarily suspended. The medical examination requested by the employer, at its expense, was, therefore, a condition precedent to the advancement of Weymouth's claim for compensation for the injuries sustained on March 15, 1938. The statutory right to an examination is entirely independ-

ent of the relationship of employer and employee. It may well be that, at the time of the examination, the injured applicant may be working for a new and different employer. In any event, in reporting to Dr. Stephenson for examination, Weymouth was not performing any task or duty of his employment or any service "under any contract of hire, express or implied, oral or written." He was complying with the statutory right given the former employer and attempting to substantiate his own claim.

The judgment of the circuit court of McLean County is reversed and the award of the Industrial Commission set aside.

*Judgment reversed; award set aside.*