MARY FRANCIS MENARD, Appellant, v. ILLINOIS WORKERS' COMPENSATION COMMISSION et al. (Gateway Foundation, Appellee).

Fifth District (Illinois Workers' Compensation Commission Division)
No. 5—09—0354WC

Opinion filed November 16, 2010.

Jerald J. Bonifield, of Bonifield & Rosenstengel, P.C., of Belleville, for appellant.

Michael A. Brandow, of Brady, Connolly & Masuda, P.C., of Normal, for appellee.

JUSTICE HUDSON delivered the opinion of the court:

On April 1, 1999, claimant, Mary Francis Menard, filed an application for adjustment of claim (case No. 99 WC 17394) pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 1998)). In her application, claimant alleged that she suffered a work-related injury in February 1999 due to "anxiety/mental illness caused by conflicts" while working for respondent, Gateway Foundation. Several months later, respondent terminated claimant's employment. On January 24, 2003, claimant filed a second application for adjustment of claim (case No. 03 WC 03802) alleging that she sustained an injury to her back in February 2000 while preparing to travel home from an independent medical evaluation (see 820 ILCS 305/12 (West 1998)) related to the claim filed in April 1999. Both claims were consolidated for hearing before an arbitrator. With respect to case No. 03 WC 03802, the arbitrator found claimant's back injury compensable. A majority of the Illinois Workers' Compensation Commission (Commission) affirmed and adopted the decision of the arbitrator. The circuit court of Jackson County, however, set aside the Commission's decision on the basis that an employer-employee relationship did not exist between the parties at the time of the February 2000 incident. Claimant now appeals.[1] We affirm the decision of the trial court.

Claimant began working for respondent in 1989. On April 1, 1999, claimant filed an application for adjustment of claim (case No. 99 WC 17394) alleging that she suffered a work-related injury on February 5, 1999, as a result of "anxiety/mental illness caused by conflicts" while working for respondent. In June or July 1999, respondent terminated claimant's employment for her failure to report to work after February 5, 1999.

---

[1]According to the record, the arbitrator awarded claimant benefits in case No. 99 WC 17394, but the Commission reversed the decision of the arbitrator. The present appeal concerns only case No. 03 WC 03802.

Following claimant's termination, and in the process of litigating case No. 99 WC 17394, respondent requested that claimant undergo an independent medical evaluation (IME). See 820 ILCS 305/12 (West 1998). The IME was scheduled for February 20, 2000, with a doctor located in suburban Chicago, about 400 miles north of claimant's home in Carbondale, Illinois. Claimant requested an examination closer to her home, but she was unsuccessful in having the location changed. Because of the lengthy distance between her residence and the doctor's office, claimant spent the night prior to the examination in the Chicago area. Claimant testified that the weather driving to Chicago was fine. However, overnight, there was a heavy snowfall. According to claimant, after the examination, the snow and the ice were so bad that she decided to spend the night of the examination at a hotel. The following morning, claimant was carrying a duffle bag with her personal belongings and medical records to the car when she slipped, but did not fall, on some ice. Claimant explained that as a result of the slip, her back "went out." Claimant stated that she experienced "terrible pain" in her back and down her right leg. Claimant testified that the only reason that she traveled to the Chicago area was for the IME. Although surgery was recommended, claimant only underwent conservative treatment for her injury.

Claimant then filed a second application for adjustment of claim alleging accidental injuries as a result of the slip in February 2000. Although the arbitrator acknowledged that claimant's employment had been terminated prior to the time she injured her back in February 2000, he nevertheless concluded that an employer-employee relationship existed at that time, explaining that claimant had been "directed to attend [the IME] as it related to her prior activities at work and, further, [she] was not only authorized by respondent to attend this exam in Chicago *** but that she was, in fact, directed to do so." The arbitrator further determined that claimant sustained an injury that arose out of and in the course of her employment with respondent and that there was a causal connection between claimant's current condition of ill-being and the accidental injury of February 2000. The arbitrator awarded claimant 35$^4$/$_7$ weeks of temporary total disability benefits (see 820 ILCS 305/8(a) (West 1998)) and 150 weeks of permanent partial disability benefits (see 820 ILCS 305/8(d)(2) (West 1998)), representing a 30% loss of the person as a whole.

With one commissioner dissenting, the Commission affirmed and adopted the decision of the arbitrator. The circuit court of Jackson County, however, set aside the Commission's decision. Relying principally on *Skelgas Co. v. Industrial Comm'n*, 400 Ill. 322 (1948), the circuit court held that the Act does not provide coverage for

injuries occurring incident to an employer-mandated physical examination when the claimant is no longer an employee at the time of the posttermination injury. This appeal by claimant ensued.

On appeal, claimant argues that the trial court erred in setting aside the decision of the Commission. Prior to addressing claimant's argument, we direct her attorney to Supreme Court Rule 341 (210 Ill. 2d R. 341), which governs the form and contents of appellate briefs. In particular, we note that in violation of Rules 341(h)(6) and 341(h)(7) (210 Ill. 2d Rs. 341(h)(6), (h)(7)), neither the statement of facts nor the argument section of claimant's brief references the pages of the record relied on. Further, in violation of Supreme Court Rules 6 and 341(h)(7) (145 Ill. 2d R. 6; 210 Ill. 2d R. 341(h)(7)), there is a persistent failure to provide pinpoint citations to the authorities cited in the brief. Finally, we note that claimant's opening brief is not paginated. See 210 Ill. 2d R. 341(a).

■ Our supreme court's rules are mandatory rules of procedure, not mere suggestions. *People v. Garstecki*, 382 Ill. App. 3d 802, 811 (2008), *aff'd on other grounds*, 234 Ill. 2d 430 (2009). A party's failure to abide by Rule 341 makes appellate review of his or her claim more onerous (*In re Marriage of Cerven*, 317 Ill. App. 3d 895, 900 (2000)) and may result in waiver (see *Gomez v. The Finishing Co.*, 369 Ill. App. 3d 711, 723 (2006); *Elder v. Bryant*, 324 Ill. App. 3d 526, 533 (2001); *McDuffee v. Industrial Comm'n*, 222 Ill. App. 3d 105, 111 (1991)). We opt not to take such a harsh measure in this case given that the facts are relatively uncomplicated and the issue is simple. Nevertheless, we warn counsel for claimant to adhere to Rule 341 in the future. We now turn to the merits of the appeal.

"Proof that a relationship of employer-employee existed at the time of the accident is an essential element of an award under the *** Act [citations]." *Alexander v. Industrial Comm'n*, 72 Ill. 2d 444, 448 (1978). The existence of an employer-employee relationship is generally a question of fact. *Reed v. White*, 397 Ill. App. 3d 975, 978-79 (2010). When, however, there is no conflict in the evidence and but one conclusion can reasonably be drawn therefrom, the existence of an employer-employee relationship becomes a question of law. *Pearson v. Industrial Comm'n*, 318 Ill. App. 3d 932, 935 (2001).

Claimant does not dispute that her employment had been terminated by respondent at the time of the February 2000 incident. Nevertheless, she asserts that her back injury on that date is compensable because it occurred while she was attending an IME at respondent's direction. Claimant's argument is foreclosed by *Skelgas*, 400 Ill. 322. In *Skelgas*, the employee worked as a salesman. On March 15, 1938, the employee suffered injuries that arose out of and in the

course of his employment with the employer. On January 31, 1939, the employer discharged the employee. On the morning of February 3, 1939, the employee drove from his residence in Chatsworth, Illinois, to Bloomington, Illinois, to undergo an IME at the employer's request. The sole purpose of traveling to Bloomington was so that the employee could undergo the IME. While returning from Bloomington to Chatsworth, the employee was killed in an automobile accident. Thereafter, the employee's widow sought benefits under the Act.

As framed by our supreme court, the issue in *Skelgas* was whether the employee was employed by the employer at the time of the fatal accident. *Skelgas*, 400 Ill. at 327. The court answered this inquiry in the negative, explaining:

> "Undisputed facts impel the conclusion that [the employee's] employment terminated as of January 31, 1939, and, in consequence, on February 3, 1939, he was not an employee of the Skelgas Company. This being so, it follows necessarily that the accident resulting in his death was not compensable under the *** Act." *Skelgas*, 400 Ill. at 327.

The court also noted that the employee was not performing any task or duty of his employment. *Skelgas*, 400 Ill. at 328.

■ The facts in this case are almost indistinguishable from those in *Skelgas*. Here, claimant filed an application for adjustment of claim alleging a psychological injury while in respondent's employ. Claimant was subsequently discharged from respondent's employ. Thereafter, claimant underwent an IME at respondent's request. Claimant filed a second application for adjustment of claim alleging a physical injury while preparing to travel home from the IME. Like the employee in *Skelgas*, who traveled to Bloomington for the sole purpose of undergoing the IME at the employer's request, the sole reason claimant was in Chicago was to attend the IME requested by respondent. Claimant suggests that *Skelgas* is bad law and that the decision "should never have been authored or, once authored, should have been overturned many years ago in order to more accurately comport with the purpose of the *** Act." However, claimant cites no authority for these propositions. Moreover, we are bound to follow *Skelgas* as the case has not been overruled by our supreme court. *Southeastern Illinois Electric Cooperative, Inc. v. Human Rights Comm'n*, 162 Ill. App. 3d 806, 811 (1987) (noting that appellate court is bound to follow decisions of the state supreme court).

Claimant also suggests that, in attending the IME in Chicago, she was acting within the scope of her employment because she attended the examination at the direction of respondent. This argument has been rejected by our supreme court. In *Skelgas*, for instance, the court

acknowledged that under section 12 of the Act, an employer has the right to have an employee requesting workers' compensation benefits undergo an independent medical examination. *Skelgas*, 400 Ill. at 328. However, the court described this "statutory right" as being "entirely independent of the relationship of employer and employee." *Skelgas*, 400 Ill. at 328-29. In a subsequent case, the supreme court explained that the failure of an employee to accept medical treatment at the request of an employer does not constitute a term or condition of employment since the failure to comply with the employer's request "results only in the suspension or reduction of an award of compensation benefits [citation], not in the suspension or termination of the employment relationship." *Lee v. Industrial Comm'n*, 167 Ill. 2d 77, 85 (1995); see also *King v. Industrial Comm'n*, 301 Ill. App. 3d 958, 963 (1998), *aff'd*, 189 Ill. 2d 167 (2000). Therefore, we find unpersuasive claimant's argument that her attendance at the IME constituted a condition of her employment.

For the reasons stated above, we affirm the judgment of the circuit court of Jackson County, which set aside the decision of the Commission.

Affirmed.

McCULLOUGH, P.J., and HOFFMAN, HOLDRIDGE, and STEWART, JJ., concur.