**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 220269-U

Order filed March 17, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| LAYKO PROPERTIES, | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| Plaintiff-Appellant, | ) | DuPage County, Illinois, |
| | ) | |
| v. | ) | Appeal No. 3-22-0269 |
| | ) | Circuit Nos. 2014-L-80, |
| M-OK DISTRIBUTION, INC., M-OK | ) | 2018-MR-750 (cons.) |
| FREIGHT LINES CORP., TERRENCE | ) | |
| O'KEEFE and PHIL MICELI, | ) | Honorable |
| | ) | Robert Rohm, |
| Defendants-Appellees. | ) | Judge, Presiding. |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Presiding Justice Hettel and Justice Brennan concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*: The trial court's assessment of sanctions against the defendants under Illinois Supreme Court Rules 137 and 219 was not an abuse of discretion; and (2) the trial court did not abuse its discretion in any of its evidentiary rulings.

¶ 2     Plaintiff-Appellant, Layko Properties (Layko), sued Defendant-Appellant, M-OK Distribution, Inc. (M-OK Distribution), and its principals, Phil Miceli and Terrence O'Keefe, for breach of the parties' lease agreement and was granted a default judgment. Layko filed motions to discover assets against the defendants and against M-OK Freight Lines Corp. (M-OK Freight),

which Layko argued was a successor in interest to M-OK Distribution. The defendants claimed that M-OK Distribution had ceased to exist and had no assets, that M-OK Distribution and M-OK Freight were unrelated businesses, and that M-OK Distribution did not own trucks or transportation equipment. After approximately eight years of litigation, the defendants conceded that M-OK Freight was a successor in interest to M-OK Distribution and that M-OK Distribution owned trucks and transportation equipment.

¶ 3 Layko filed a motion for sanctions against the defendants under Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018) and Rule 219 (eff. July 1, 2002). Layko argued that the defendants' lies about M-OK Distribution's assets and its relationship to M-OK Freight caused Layko to spend more than $500,000 in litigation costs and attorney fees.

¶ 4 After conducting an evidentiary hearing, the trial court sanctioned the defendants for lying about M-OK Distribution's ownership of trucks and transportation equipment but declined to impose sanctions for other acts of misconduct alleged by Layko.

¶ 5 In this appeal, Layko asks us to vacate trial court's sanctions order and award the full amount of sanctions Layko sought in the proceedings below, plus the costs Layko incurred in bringing this appeal.

¶ 6                                    I.  BACKGROUND

¶ 7 On September 3, 2009, Layko entered into a lease agreement with M-OK Distribution, a trucking company that purported to broker freight. Pursuant to the agreement, Layko leased warehousing and storage space to M-OK Distribution in Burr Ridge, Illinois. O'Keefe and Miceli executed the lease on behalf of M-OK Distribution. At some time thereafter, M-OK Distribution abandoned the leased premises and stopped paying rent.

2

¶ 8　　　　On January 27, 2014, Layko sued M-OK Distribution in the Circuit Court of DuPage County to recover damages owed to it under the terms of the lease. On April 29, 2014, Layko obtained a default judgment against M-OK Distribution in the amount of $144,913.60.

¶ 9　　　　In July of 2014, Layko attempted to collect on the judgment by serving non-wage garnishments on M-OK Distribution's bank and on Group Scholle Packaging, Inc. (Scholle), which was the primary customer of M-OK Distribution and M-OK Freight. In its answer to the garnishment, Scholle stated that it was receiving transportation and warehousing services under an agreement with M-OK Distribution which "ha[d] been extended effective April 1, 2015 with [M-OK Freight]." Neither the bank nor Scholle acknowledged the existence of assets available for satisfaction of the April 29, 2014, judgment against M-OK Distribution.

¶ 10　　　　On November 17, 2014, M-OK Distribution filed a petition for postjudgment relief seeking to vacate the 2014 judgment. In an affidavit attached to the petition, Miceli swore that M-OK Distribution had ceased doing business prior to the entry of the April 29, 2014, judgment and had no assets. In support of that statement, M-OK Distribution submitted a certificate of dissolution from the state of North Carolina, which certified that M-OK Distribution, a North Carolina corporation, had been administratively dissolved for failure to file an annual report as of January 14, 2014. The certificate noted that a corporation administratively dissolved "may apply to the Secretary of State for reinstatement" by complying with the procedure set forth in the governing North Carolina statute. Miceli further swore that M-OK Freight was a different company from M-OK Distribution. M-OK Distribution withdrew its petition in 2016, before a hearing on the petition was conducted.

¶ 11　　　　On June 15, 2016, Layko served a citation to discover assets pursuant to section 1402 of the Illinois Code of Civil Procedure against M-OK Distribution through Miceli and O'Keefe.

(735 ILCS 5/2-1402 (West 2016)). The citation directed M-OK Distribution to supply, among other things, a statement of "all trucks, trailers and other personal property owned or leased by [M-OK Distribution] for the years 2010, 2011, 2012, 2013, and 2014" and copies of all lease agreements in which M-OK Distribution was a lessor or a lessee. M-OK's counsel, Andrew Duncan, produced several documents in response to Layko's citation, including bank account records, QuickBooks records, the transportation services agreement between M-OK Distribution and Scholle, the trailer plate requests for trailers leased by M-OK Distribution, and an "accountant authorization" so Layko could obtain records directly from the company's accountant. Layko's counsel was also provided with IRS Form 4506 so he could obtain copies of the tax returns filed by M-OK Distribution directly from the IRS.

¶ 12        On September 22, 2016, the court ordered M-OK Distribution to provide an affidavit of completeness attesting under penalty of perjury that M-OK Distribution had provided all available documents responsive to Layko's citation to discover assets. Miceli signed an affidavit to that effect.

¶ 13        On May 1, 2018, O'Keefe submitted to a citation examination. During the examination, O'Keefe swore under oath that M-OK Distribution did not have trucks or trailers. He stated that M-OK Distribution was in the business of brokering freight, not shipping freight.

¶ 14        On May 24, 2018, Layko filed a complaint against M-OK Freight to collect on the April 29, 2014, judgment against M-OK Distribution based upon a theory of successor liability and under the Illinois Fraudulent Transfer Act (740 ILCS 160 *et seq.* (West 2018)). In the complaint, Layko alleged that the principals of M-OK Distribution incorporated M-OK Freight on or about March 22, 2013, and immediately thereafter transferred all the assets of M-OK Distribution to M-OK Freight without consideration. Layko further alleged that M-OK Freight had collected

4

accounts receivable due to M-OK Distribution for services performed by M-OK Distribution before M-OK Freight was incorporated. Layko claimed that all these actions were performed in a fraudulent attempt to evade M-OK Distribution's liability for its debts, including the April 29, 2014, judgment that Layko had obtained against it. The complaint further alleged that M-OK Distribution and M-OK Freight were mere "facade[s]" that were the alter egos of Miceli and O'Keefe." Layko sought to pierce the corporate veil of M-OK Distribution and impose personal liability for the April 29, 2014, judgment on Miceli and O'Keefe.

¶ 15        On November 9, 2018, Layko issued a third-party citation to discover assets against M-OK Freight under section 2-1402 of the Code (735 ILCS 5/2-1402 (West 2018)). Attorney Timothy Okal filed an appearance on behalf of M-OK Freight. In response to Layko's discovery requests, Okal produced M-OK Freight's corporate tax returns for the years 2013, 2014, 2015, 2016 and 2017, along with M-OK Freight's profit and loss statements from 2013 through November of 2018. Okal subsequently produced M-OK Freight's bank statements, general ledger, schedule of sales, and schedule of invoice payments, among other documents. Layko's counsel asked Okal to produce all documents showing any payments from Scholle to M-OK Freight for work performed by M-OK Distribution. Okal responded that the documents that M-OK Freight had already produced, including M-OK Freight's invoices, bank statements and QuickBooks files, demonstrated that "all the monies received by M-OK Freight Lines were monies paid to M-OK Freight for work performed by M-OK Freight Lines. M-OK Freight Lines did not receive any money from any customer for work performed by M-OK Distribution."

¶ 16        On July 21, 2020, Miceli gave an evidence deposition during which he was asked about certain accounts receivable ("receivables") recorded in M-OK Distribution's 2011 and 2013 balance sheets. Layko's counsel noted that the 2011 balance sheet indicated that "MMD

5

Transport," another entity controlled by Miceli and O'Keefe, owed M-OK Distribution $218,632, and that Miceli owed M-OK Distribution $78,837.90. The 2013 balance sheet also reflected that MMD Transport owed M-OK Distribution $218,632, and Miceli owed $87,337.90. When Layko's counsel asked Miceli about these receivables, Miceli responded that the balance sheet entries at issue were inaccurate. He stated that the entry showing that he owed $78,837.90 to M-OK Distribution was "an internal error on our spreadsheet that I persisted that the accountants get it fixed year after year because I never had this money. I never borrowed this money, and I never had this money." When asked about the entry showing that MMD Transport owed M-OK Distribution hundreds of thousands of dollars, Miceli stated that he thought that reflected a loan that M-OK Distribution had taken from Evergreen Bank. When Layko's counsel asked Miceli why the entry showed it as a debt owed by MMD Transport, Miceli responded "I don't know. I don't know. I don't know. *** these years, 2010, '11, '12, and '13 were—several people were doing my books. We caught a couple of people stealing. They screwed up these entries. They screwed up the receivables, the payables." Miceli further swore that M-OK Distribution did not own any trucks or trailers.

¶ 17        On March 10, 2020, Layko filed a motion for turnover against M-OK Freight pursuant to sections 1402(c)(1) and (5) of the Code. 735 ILCS 5/2-1402(c)(1), (c)(5) (West 2020). Layko argued that M-OK Freight was liable for all M-OK Distribution's debts, including the April 29, 2014, judgment in favor of Layko, because M-OK Freight was a successor of M-OK Distribution. Layko sought a money judgment against M-OK Freight in the amount of the April 29, 2014, judgment plus interest, attorney fees, and costs. In response to Layko's motion, M-OK Freight maintained that it was not a successor to M-OK Distribution because it was a shipping company, whereas M-OK Distribution was a transportation broker.

6

¶ 18        M-OK Freight also filed a motion to strike and dismiss Layko's revised motion for turnover. In its motion, M-OK Freight argued that the trial court lacked the authority to enter a money judgment or to adjudicate the issue of successor liability in the citation proceeding. M-OK Freight argued that section 1402 of the Code only authorizes a court to order the turnover of specific assets in the possession of a third-party respondent that belong to the judgment debtor. *Id.*

¶ 19        On January 15, 2021, the trial court denied M-OK Freight's motion and held that it had the authority to adjudicate the issue of successor liability in the citation proceeding. Over the ensuing weekend, the defendants agreed to stipulate to the legal issue of successor liability. On January 19, 2021, the trial court entered an order by stipulation that M-OK Freight was a successor to M-OK Distribution and was therefore liable for the April 29, 2014, judgment. The parties stipulated that Layko would file a petition for attorney fees and costs by January 26, 2021.

¶ 20        Layko filed its petition for attorney fees and costs on January 25, 2021. In the petition, Layko alleged that the defendants' knowingly false denials of successor liability prior to January 21, 2021, had caused Layko to (1) file approximately 48 motions and pleadings, (2) participate in approximately 68 hearings, (3) issue approximately 30 subpoenas and citations, (4) conduct depositions, and (5) prepare for an evidentiary hearing. Layko's fee application requested $241,822 in attorney fees and $132,825 in accountant fees. Layko argued that it was entitled to recoup these fees and costs under the parties' lease agreement and as a sanction pursuant to Illinois Supreme Court Rule 137(a) (eff. January 1, 2018).

¶ 21        On January 18, 2022, Layko filed a motion for sanctions against M-OK Freight, Miceli, and O'Keefe pursuant to Illinois Supreme Court Rule 137 and Rule 219 (eff. July 1, 2002). In its

motion, Layko argued that it was entitled to recover all of the fees and costs it incurred as a result of the defendants' lies about M-OK Distribution's ownership of trucks and other assets and their refusal to acknowledge that M-OK Freight was merely a name change for M-OK Distribution (among other misconduct). The defendants filed a response, and the matter was set for an evidentiary hearing on February 18, 2022.

¶ 22        On February 10, 2022, Layko's counsel e-mailed defendants' counsel disclosing title documents it had obtained from the Illinois Secretary of State with respect to three trucks at issue in the case. On February 14, 2022, the defendants filed a motion pursuant to Rule 3.3 of the Illinois Rules of Professional Conduct withdrawing M-OK's prior denial of ownership of those trucks. Ill. R. Pro. Conduct (2010) R. 3.3 (eff. Jan. 1, 2010). Four days later, the defendants tendered payment of the entire judgment and all statutory interest that had accrued through February 18, 2022.

¶ 23        During the February 18, 2022, hearing, Okal announced that he would be testifying about the registration of certain vehicle apportionment identification cards, documents used to register commercial vehicles. Layko's counsel objected, arguing that Okal was not disclosed as a fact witness prior to the hearing and that the Illinois Rules of Professional Conduct barred Okal from testifying on behalf of his client. The trial court denied Layko's objection and allowed Okal to testify.

¶ 24        During cross-examination, Okal admitted that he did nothing to verify the truth of M-OK Distribution's claim that it owned no trucks. Layko's counsel had previously disclosed to the defendants' counsel evidence of LexisNexis searches showing that M-OK Distribution owned trucks and trailers. Okal admitted that, although his firm used Westlaw, he did not attempt to replicate the searches provided by Layko's counsel.

8

¶ 25    On March 11, 2022, Layko's counsel presented evidence of what he alleged were knowingly false statements the defendants had made in pleadings, affidavits, and depositions throughout the postjudgment litigation, beginning with sworn statements the defendants had made during the July 2014 garnishment proceedings and in their November 2014 petition to vacate the judgment. For example, Layko's counsel identified several instances where the defendants swore that M-OK Distribition had no assets and did not own any trucks or transportation equipment. Layko's counsel also pointed to the defendants' sworn statements that M-OK Distribition and M-OK Freight were separate entities and the defendants' repeated denials that M-OK Freight had acquired the assets and liabilities of M-OK Distribution.

¶ 26    Layko's counsel argued that, had the defendants not lied about these matters, Layko could have obtained satisfaction of the judgment at the earliest stages of the postjudgment proceedings, and it would not have had to spend several years seeking to discover and obtain assets from M-OK Freight and litigating the issues of alter ego and successor liability.

¶ 27    The trial court considered Layko's evidence and argument for each alleged instance of sanctionable conduct under Rules 137 or 219 and ruled on each such instance individually. The trial court ruled that some, but not all, of the statements identified by Layko were sanctionable under Rules 137 or 219. Specifically, the trial court ruled that the defendants had knowingly and deliberately lied on several occasions when they stated that M-OK Distribution did not own any trucks. The court ruled that every such statement made during discovery was sanctionable under Rule 219, and that any such statement made in a document filed in court was sanctionable under Rule 137. However, the court found that the remaining alleged misrepresentations identified by Layko were not sanctionable.

¶ 28　　　　The trial court directed Layko's counsel to file a petition for the fees and costs it had incurred as a result of the defendants' denial that M-OK Distribution owned trucks or trailers. The court cautioned Layko's counsel that he had an ethical obligation under Rule 137 to limit his claim for fees and costs to what he reasonably believed was related to the defendants' denial that M-OK Distribution owned trucks. The court further admonished Layko's counsel that "there sure better not be any entries prior to the first time that *** that misrepresentation was made," which occurred during O'Keefe's citation examination on May 1, 2018.

¶ 29　　　　On March 24, 2022, Layko filed its petition for fees and costs. In the petition, Layko sought more than $518,000 in attorney fees and costs. Layko claimed that these fees and costs were related to the defendants' lies that M-OK Distribution owned no trucks or other assets. Layko argued that, if O'Keefe had answered truthfully on May 1, 2018, Layko would have been made whole and the litigation would have ended. Layko maintained that, because of O'Keefe and Micel's lies about M-OK's ownership of trucks and other assets, Layko was forced to litigate the matter for an additional four years.

¶ 30　　　　On April 15, 2022, the trial court held a hearing on Layko's petition for fees and costs. The court found that there was no good faith basis for Layko to claim more than $500,000 in attorney fees and costs as a result of the defendants' sanctionable conduct because Layko would have incurred "99 percent" of those fees and costs regardless of the defendants' lies about trucks and other transportation equipment. The court opined that Layko's petition was "a sanctionable pleading," and it asked the defendants' counsel why he had not filed a motion for sanctions against Layko. The court gave Layko's counsel leave to file a second petition for fees and costs that complied with the court's prior ruling on sanctions. Specifically, the trial court told Layko's counsel that the second petition should itemize the expenses that were directly caused by the

10

defendants' misrepresentations about trucks and trailers, *i.e.*, expenses for actions that Layko would not have taken but for those particular misrepresentations.

¶ 31    On April 22, 2022, Layko filed its second petition. The petition sought approximately $279,000 in attorney fees and costs. The trial court conducted a hearing on Layko's second petition on May 17, 2022. The trial court found that the second petition improperly included amounts that were not caused by the defendants' lies about truck ownership on or after May 1, 2018. The court asked Layko's counsel whether Layko would have stopped its collection efforts if Miceli and O'Keefe had admitted that they had owned trucks and transportation equipment in the past. Layko's counsel responded, "no." The court noted that Layko was pursuing a claim for damages under the lease agreement for the same attorney fees it was claiming in the instant citation proceedings, and Layko's counsel admitted that might be able to collect those fees in the underlying litigation depending on the court's interpretation of the contract language.

¶ 32    The court ordered Layko to file yet another fee petition. It directed Layko to include only attorney fees that Layko claimed were "necessitated by" the defendants' lies about truck ownership, *i.e.*, fees incurred for things that Layko "wouldn't have done anyways [*sic*]."

¶ 33    Layko filed its third petition on May 24, 2022. This time, Layko sought fees and costs of approximately $152,000. A hearing on the petition was held on June 9, 2022. During the hearing, Layko's counsel reduced the claimed amount to $132,000. The trial court stated that it understood Layko's counsel's argument that, if the defendants had initially told Layko the truth about its assets, Layko might not have needed to prove that M-OK Freight was a successor in interest to M-OK Distribution, and the case might have been over. The court noted that it now understood this argument better than it had previously, and it acknowledged that it had

11

"exceeded [its] authority" when it suggested that Layko's initial fee application was sanctionable. It therefore denied the defendants' motion for sanctions.

¶ 34 Nevertheless, the trial court denied Layko's third petition. The court again found that the claimant would have pursued most of the litigation even if the defendants had admitted that M-OK Distribution owned trucks. The court awarded sanctions in the amount of $53,217.62, which it found corresponded to the attorney fees and costs that Layko incurred entirely as the result of the defendants' lies about M-OK Distribution's ownership of trucks and trailers.

¶ 35 This appeal followed.

¶ 36 II. ANALYSIS

¶ 37 As a preliminary matter, we note that Layko has flagrantly violated the requirements of Illinois Supreme Court Rule 341 in preparing its brief. Rule 341(h)(6) provides, in pertinent part, that an appellant's statement of facts "shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment." Ill. S. Ct. R. 341(h)(6) (eff. Jan. 1, 2016). Layko's statement of facts is rife with argument and commentary. It reads more like an extended argument than a statement of facts. Our supreme court's rules governing the format and content of appellate briefs are mandatory rules of procedure, not mere suggestions. *Menard v. Illinois Workers' Compensation Comm'n*, 405 Ill. App. 3d 235, 238 (2010); *Szczesniak v. CJC Auto Parts, Inc.*, 2014 IL App (2d) 130636, ¶ 8. When a party's brief fails to comply with Rule 341(h)(6), we may dismiss the appeal, strike the statement of facts, or disregard the noncompliant portions of the party's statement of facts. *In re Marriage of Moorthy and Arjuna*, 2015 IL App (1st) 13207729, ¶ 2, n. 1; *Szczesniak*, 2014 IL App (2d) 130636, ¶ 8. We choose to address the issues on their merits, but we will disregard the argumentative statements in Layko's

12

brief. We admonish Layko's counsel to comply fully with all applicable supreme court rules in future cases.

¶ 38        Turning to the merits, Layko argues that the trial court abused its discretion by refusing to award a substantial portion of the attorney fees and costs that Layko incurred as a result of the defendants' sanctionable conduct. It further argues that the trial court abused its discretion by refusing to admit some of the evidence proffered by Layko during the sanctions hearing, and by admitting certain inadmissible evidence presented by the defendants. We address these arguments in turn.

¶ 39                              1.  The Trial Court's Sanctions Award

¶ 40        Layko argues that the trial court abused its discretion by refusing to award the entire amount of attorney fees and costs that Layko sought in its initial fee petition. Layko maintains that, if the defendants had told the truth about M-OK Distribution's assets from the beginning of the postjudgment proceedings, Layko would have obtained satisfaction of the April 29, 2014, judgment at that time and it would not have incurred more than $500,000 in attorney fees and costs tracking down M-OK Distribution's and M-OK Freight's assets and litigating the issues of alter ego and successor liability. In essence, Layko maintains that, were it not for the knowingly false statements that the defendants made in their pleadings and discovery responses, the case would have ended in 2014, and Layko would have been spared eight years of litigation costs. Layko therefore contends that it is entitled to the full amount of sanctions it initially sought under Rules 137 and 219.[1]

---

[1] Although Layko argues that it is entitled to recover all of its litigation fees and costs from 2014 onward, it only seeks to recover the fees and costs it incurred after May 1, 2018, the date that O'Keefe first lied about M-OK Distribution's ownership of trucks. Because the trial court awarded sanctions only for the defendants' lies about truck ownership, it ruled that Layko was not entitled to sanctions for any alleged misconduct occurring prior to that date. Layko argues that the court erred in limiting the sanctions award

13

¶ 41    Rule 137 states that the attorney's signature on a pleading certifies "that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law *** and that it is not interposed for any improper purpose." Ill. S. Ct. R. 137 (eff. Jan. 1, 2018). The rule was designed to prevent abuse of the judicial process by sanctioning parties who file vexatious and harassing actions based on unsupported allegations of fact or law. *Dismuke v. Rand Cook Auto Sales, Inc.*, 378 Ill. App. 3d 214, 217 (2007). The purpose of the rule is "to prevent the filing of false and frivolous lawsuits" (*Sanchez v. City of Chicago*, 352 Ill. App. 3d 1015, 1020 (2004)) or the assertion of a "sham defense" (*Law Offices of Brendan R. Appel, LLC v. Georgia's Restaurant and Pancake House*, 2021 IL App (1st) 192523, ¶¶ 55-57, 75). Rule 137 is penal in nature and is therefore narrowly construed. *Law Offices of Brendan R. Appel, LLC*, 2021 IL App (1st) 192523, ¶ 52. It is not meant to punish parties "simply because they have been unsuccessful in the litigation." *Burrows v. Pick*, 306 Ill. App. 3d 1048, 1050 (1999). "The standard for evaluating a party's conduct under this rule is one of reasonableness under the circumstances existing at the time the pleading was filed." *Law Offices of Brendan R. Appel, LLC*, 2021 IL App (1st) 192523, ¶ 63.

¶ 42    When relief is sought under Rule 137, the motion must identify not only the improper statement but also the fees and costs that directly resulted from the false statement. *Conner v. First Chicago Holdings*, 2021 IL App (1st) 200199, ¶ 32; see also *Law Offices of Brendan R. Appel, LLC*, 2021 Il App (1st) 192523.  Such specificity enables the trial court to determine "the reasonable expenses incurred as a consequence thereof." *Conner*, 2021 IL App (1st) 200199, ¶ 32.

---

to the defendants' lies about trucks. Nevertheless, Layko only asks us to award the amount it sought in the initial fee petition filed on March 24, 2022, which was limited to costs and fees incurred after May 1, 2018.

¶ 43    The decision to impose sanctions is within the sound discretion of the trial court, and that decision will not be disturbed on review absent an abuse of discretion. *Law Offices of Brendan R. Appel, LLC*, 2120 IL App (1st) 192523, ¶ 74; see also *In re Marriage of Schneider*, 298 Ill. App. 3d 103, 109 (1998). When considering the propriety of an award of sanctions under Rule 137, a reviewing court determines "whether the trial court's decision was informed, based on valid reasoning, and follows logically from the facts." *Technology Innovation Center, Inc. v. Advanced Multiuser Technologies Corp.*, 315 Ill. App. 3d 238, 244 (2000). A trial court exceeds its discretion regarding the imposition of sanctions under Rule 137 only where no reasonable person would take the view adopted by it. *Law Offices of Brendan R. Appel, LLC*, 2120 IL App (1st) 192523, ¶ 74.

¶ 44    A trial court may impose sanctions under Supreme Court Rule 219 against a party who violates the Illinois Supreme Court Rules governing the discovery process. Ill. S. Ct. R. 219 (eff. July 1, 2002). For example, Rule 219 sanctions may be warranted when a party provides false or misleading answers during depositions, answers to interrogatories, or requests to admit. Ill. S. Ct. R. 219(b), (c). Trial courts should not be hesitant to impose appropriate sanctions under Rule 219, if requested. *Boettcher v. Fournie Farms, Inc.*, 243 Ill. App. 3d 940, 948 (1993). An appropriate sanction "may include an order to pay to the other party or parties the amount of reasonable expenses incurred as a result of the misconduct, including a reasonable attorney fee, and when the misconduct is willful, a monetary penalty." Ill. S. Ct. R. 219(b), (c).

¶ 45    In determining what sanction to impose under Rule 219, if any, a trial court must consider (1) the surprise to the adverse party, (2) the prejudicial effect of the proffered testimony or evidence, (3) the nature of the testimony or evidence, (4) the diligence of the adverse party in seeking discovery, (5) the timeliness of the adverse party's objection to the testimony or

15

evidence, and (6) the good faith of the party offering the testimony or evidence. *Shimanovsky v. General Motors Corp.*, 181 Ill. 2d 112, 124 (1998).

¶ 46    A reviewing court may reverse a trial court's imposition of a particular sanction only if the record establishes a clear abuse of discretion. *Id.* at 123. An abuse of discretion occurs when the trial court's ruling is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court. *Thomas v. Weatherguard Construction Co.*, 2018 IL App (1st) 171238, ¶ 53. "The issue *** is not what decision we would have reached if we were reviewing the facts on a clean slate, but whether the trial court acted in a way that no reasonable person would." *Vivas v. Boeing Co.*, 392 Ill. App. 3d 644, 657 (2009).

¶ 47    In this case, the trial court found that the defendants had knowingly and intentionally lied on seven occasions in various affidavits, discovery responses, and depositions (beginning with O'Keefe's deposition on May 1, 2018), when they swore that M-OK Distribution did not own trucks or trailers. The trial court found that Layko had incurred $53,217.62 in attorney fees and costs as the result of these lies, and it ordered the defendants to pay that amount to Layko as a sanction under Rules 137 and 219. However, the court refused to award the remainder of the litigation fees and costs sought by Layko because it found that Layko would have incurred those fees and costs in the proceedings to discover assets against M-OK Distribution and M-OK Freight even if the defendants had admitted that M-OK Distribution owned trucks.

¶ 48    We cannot say that the trial court's award of sanctions was an abuse of discretion. From the time of O'Keefe's deposition on May 1, 2018, until four days before the hearing on Layko's motion for sanctions in February 2022, the defendants repeatedly swore in depositions, discovery responses and written documents filed with the court that M-OK Distribution did not own any trucks or other transportation equipment. The defendants later acknowledged that M-OK

16

Distribution did own trucks. The defendants' repeated misrepresentations about M-OK Distribution's ownership of trucks and other transportation equipment prejudiced Layko by forcing Layko to incur substantial attorney fees and costs in an effort to prove that M-OK Distribution did, in fact, own trucks or other transportation equipment. Layko was diligent in seeking discovery on this issue, and it objected to the defendants' misrepresentations in a timely fashion. The trial court's award of sanctions for the defendants' misconduct was supported by the record and logically flowed from the facts, and the defendants have not cross-appealed the trial court's ruling.

¶ 49        Layko argues that the trial court abused its discretion by limiting the sanctions award to the fees and costs Layko incurred in its efforts to prove that M-OK Distribution owned trucks and trailers. Layko notes that, from the beginning of the postjudgment litigation, the defendants falsely swore that M-OK Distribution had *no assets* at the time of the April 29, 2014, judgment or thereafter. Layko maintains that, at the time of O'Keefe's citation examination on May 1, 2018, M-OK Distribution had assets in the form of receivables that would have been sufficient to satisfy the April 29, 2014, judgment. Specifically, Layko notes that M-OK Distribution's 2013 balance sheet showed that 1) MMD Transport, another entity controlled by Miceli, owed M-OK Distribution more than $218,000, and 2) Micelli owed M-OK Distribution more than $87,000. These receivables would have been subject to the lien issued in the initial citation to discover assets. Layko contends that, if the receivables had been disclosed to Layko on May 1, 2018, Layko would have obtained complete satisfaction of the judgment at that time, thereby obviating the need for any further litigation. Accordingly, Layko argues that the trial court's sanctions award should have included all the attorney fees and costs it incurred after May 1, 2018, which

17

Layko claimed amounted to more than $500,000. Layko maintains that the trial court abused its discretion by failing to include these fees and costs in the sanctions award.

¶ 50 We disagree. When Layko's counsel asked Miceli about these receivables during his deposition, Miceli denied that they existed and claimed that the spreadsheet entries reflecting the receivables were inaccurate. When Layko's counsel read Micelli's testimony to the court during the sanctions hearing, the trial court ruled that the testimony was not sanctionable under Rule 219. The trial court apparently found Miceli's testimony to be credible or, at least, not obviously false. We accord deference to a trial court's credibility findings. See *Nolan v. Hearthside Homebuilders, Inc.*, 2020 IL App (1st) 182492, ¶ 83. "The issue, *** is not what decision we would have reached if we were reviewing the facts on a clean slate, but whether the trial court acted in a way that no reasonable person would." *Vivas*, 392 Ill. App. 3d 644 at 657. We cannot conclude that the trial court's decision to credit Miceli's testimony on this issue was patently unreasonable.

¶ 51 Layko also asserts that the value of the trucks owned by M-OK Distribution on May 1, 2018, would have been sufficient to satisfy the April 29, 2014, judgment, and thereby end the litigation. However, Layko provides no support for this assertion. It does not indicate how much the trucks and trailers were worth in May of 2018, or at any time thereafter. M-OK Distribution's 2013 spreadsheet states that the combined value of all the trucks in its possession at that time was approximately $110,000. The trucks were presumably worth less than that on May 1, 2018. But even if they were worth $110,000, that would not have been enough to satisfy the $144,913.60 judgment plus interest. Layko's counsel was clearly aware of this. When the trial court asked him during the sanctions hearing whether Layko would have stopped its collection

18

efforts if Miceli and O'Keefe had admitted that M-OK Distribution had owned trucks and transportation equipment, Layko's counsel responded, "no."

¶ 52    Layko further argues that the defendant's knowingly false assertions that M-OK Distribution and M-OK Freight were separate entities, and its denial of M-OK Freight's successor liability, amounted to a "sham defense" that caused Layko to litigate these issues for several years. Layko contends that the defendants' claim that the two companies were separate entities was predicated on the defendants' assertion that M-OK Freight owned trucks and M-OK Distribution did not. Thus, according to Layko, the defendants' lies about M-OK Distribution's ownership of trucks was the cornerstone of their sham defense, which compelled Layko to pursue a turnover action against M-OK Freight and to spend years litigating the issues of alter ego and successor liability. Relying on our appellate court's decision in *Dayan v. McDonald's Corp.*, 126 Ill. App. 3d 11 (1984), Layko argues that it was entitled to recover all of the attorney fees and costs it incurred in connection with such unnecessary litigation after May 1, 2018. It contends that the trial court abused its discretion in refusing to include those costs and fees in the sanctions award.

¶ 53    Layko's argument lacks merit. As the trial court correctly found, the issues of alter ego and successor liability were questions of law that the defendants were entitled to litigate. Although there were some documents in the defendants' possession that arguably suggested that M-OK Freight was merely a continuation of M-OK Distribution under a different name, none of those documents established as a matter of law that M-OK Freight was liable for M-OK Distribution's debts as a successor in interest.

¶ 54    Moreover, there was evidence in the record suggesting that the two companies were engaged in separate businesses. The defendants produced business records showing that M-OK

Distribution provided only brokerage services and was not engaged in the carriage of freight (as was M-OK Freight), and some of the internet research conducted by Layko's counsel revealed that M-OK Distribution was licensed solely as a broker. Thus, contrary to Layko's argument, the defendants' lies about trucks and trailers was not the sole basis for their claim that M-OK Distribution and M-OK Freight were separate entities (or for their denial of successor liability).

¶ 55       The trial court did not abuse its discretion by declining to sanction the defendants for litigating the issue of successor liability. The fact that the defendants ultimately conceded the issue does not change that fact. Rule 137 is not meant to punish parties "simply because they have been unsuccessful in the litigation." *Burrows*, 306 Ill. App. 3d at 1050.  The question is whether the defendant's decision to contest the issue was reasonable under the circumstances at the time the pleadings, briefs, or affidavits at issue were filed. *Law Offices of Brendan R. Appel, LLC*, 2120 IL App (1st) 192523, ¶ 63. We may reverse the trial court's sanctions ruling only if we conclude that no reasonable person would agree with the trial court that the defendants' decision to litigate the issues of successor liability and alter ego was not sanctionable. See *Vivas*, 392 Ill. App. 3d 644 at 657. Based on the evidence in the record, we cannot reach that conclusion.

¶ 56       *Dayan* is distinguishable. In *Dayan*, the plaintiff presented false pleadings that fabricated a claim for permanent injunction out of whole cloth, failed to produce critical documents sought by the defendant, destroyed important material evidence in anticipation of litigation, fabricated photographs and other evidence, and presented perjured witness testimony in support of its claims. *Dayan*, 126 Ill. App. 3d at 16-22. Applying long-standing precedent, our appellate court ruled that the claimant's presentation of false evidence and his concealment of evidence proved that he knew that his pleadings were unfounded and unreasonably made. *Id.* at 21. Our appellate

20

court further found that the claimant's false pleadings, fabricated evidence, and perjured witness testimony were the "cornerstone" or "gravamen" of the claimant's entire baseless lawsuit "without which there would be no dispute and no need for trial." *Id.* at 23-24. Accordingly, our appellate court affirmed the trial court's finding that all of the expenses and fees that the defendant incurred in defending the unfounded suit resulted directly from the plaintiffs' false pleadings and upheld the trial court's award of such costs and fees under then-section 2-611 of the Civil Practice Act. *Id.* at 24, 29.

¶ 57    The defendants' misconduct in this case was less prejudicial and far less egregious than the plaintiff's misconduct in *Dayan*. The defendants did not fabricate or destroy evidence. They cooperated with Layko's counsel during the discovery process and produced a large number of documents in a timely fashion.  Moreover, it was not unreasonable for the trial court to conclude that 1) the defendants were entitled to litigate the issues of successor liability and alter ego, 2) Layko had failed to establish that M-OK Freight had receivables belonging to M-OK Distribution that would have satisfied the judgment, or 3) that the need for further litigation would not have been obviated if the defendants had admitted that M-OK Distribution owned trucks.

¶ 58     Accordingly, the trial court did not abuse its discretion in fashioning its sanctions award. The trial court's sanctions ruling was informed, based on valid reasoning, and followed logically from the facts. It was neither arbitrary nor fanciful, and it cannot be said that no reasonable person would take the view adopted by the trial court.

¶ 59                                    2.  The Trial Court's Evidentiary Rulings

¶ 60    Layko argues that the trial court improperly excluded admissible evidence presented by Layko and improperly admitted inadmissible evidence presented by the defendants.

¶ 61    The admission or exclusion of evidence is within the sound discretion of the trial court, and we will not reverse the court unless that discretion was clearly abused. *Gill v. Foster*, 157 Ill. 2d 304, 312–13 (1993); *Naleway v. Agnich*, 386 Ill. App. 3d 635, 647 (2008). An abuse of discretion occurs when the court's ruling is arbitrary, fanciful or unreasonable or where no reasonable person would adopt the court's view. *TruServ Corp. v. Ernst & Young LLP*, 376 Ill. App. 3d 218, 227 (2007). Errors in the admission or exclusion of evidence do not require reversal when there has been no prejudice or the evidence does not materially affect the outcome. *Presson v. Industrial Comm'n*, 200 Ill. App. 3d 876, 880, 558 N.E.2d 127, 130 (1990); see also *Calloway v. Bovis Lend Lease, Inc.*, 2013 IL App (1st) 112746, ¶ 126.

¶ 62    Almost all the evidence that Layko argues was improperly "excluded" by the trial court was either not presented to the trail court by Layko or was considered by the trial court and found not to warrant sanctions. We will not address Layko's arguments as to such evidence.

¶ 63    Layko argues that the trial court improperly excluded evidence of O'Keefe's federal criminal conviction for fraud in 1993. Prior to the sanctions hearing, the trial court granted the defendants' motion *in limine* to exclude this evidence under Rule 609(b) of the Illinois Rules of Evidence (eff. Jan. 6, 2015), which bars the admission of evidence of a conviction if more than 10 years has elapsed from the time of the conviction or the witness's release from custody (whichever is later). O'Keefe was convicted in December of 1993 and released from custody in 1994. By the plain terms of Rule 609(b), O'Keefe's conviction was inadmissible in the 2022 sanctions hearing, and the trial court correctly excluded it.

¶ 64    Layko argues that the conviction should not have been excluded because it had previously been submitted in support of Layko's motion for summary judgment on the alter ego issue and was therefore already in the record. However, even assuming *arguendo* that this would

22

have authorized the court to consider the conviction for impeachment purposes, Layko does not explain why the court's refusal to consider it was so prejudicial that it could have affected the outcome of the proceedings. Even without evidence of the conviction, the trial court found that O'Keefe was not a credible witness, and it sanctioned him for falsely denying that M-OK Distribution did not own trucks. Layko does not identify how the trial court's exclusion of evidence of O'Keefe's criminal conviction could have affected the outcome of its sanctions ruling.

¶ 65    Layko further argues that the trial court improperly admitted inadmissible evidence during the sanctions hearings by 1) allowing the defendants' counsel to testify, 2) allowing the defendants to admit uncertified public records, and 3) allowing Okal to testify regarding the content of a privileged conversation between Layko's attorney and a Layko representative. We will address these arguments in turn.

¶ 66    Layko argues that the trial court should not have permitted Okal and Duncan, counsel for the defendants, to testify during the sanctions hearing because their conduct was not relevant to the sanctions hearing and their testimony violated the advocate-witness rule set forth in Illinois Rule of Professional Conduct 3.7(a) (eff. Jan. 1, 2010). That rule provides that "a lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness unless: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client." *Id*. However, Rule of Professional Conduct 3.7(a) is not absolute. An attorney may be allowed to testify in a case he is trying when "the court, in the exercise of its discretion, deems it necessary." *Giraldi by Giraldi v. Community Consol. School Dist. No. 62*, 279 Ill. App. 3d 679, 687 (1996).

23

¶ 67        In this case, the conduct of the defendants' counsel was arguably relevant because Layko sought sanctions against the defendants based upon pleadings, affidavits, and discovery responses prepared and presented by their counsel. It was not unreasonable for the trial court to conclude that Okal and Duncan's testimony was necessary to provide important background that would help it to adjudicate Layko's claims for sanctions. For example, Okal's and Duncan's testimony could have provided relevant information regarding the extent to which both they and their clients conducted a reasonable investigation into the matters asserted in the defendants' pleadings, affidavits, and discovery responses. Moreover, Okal and Duncan testified about several exhibits without objection from Layko, and Layko does not identify any particular portion of Okal's or Duncan's testimony that addressed a contested matter. Nor does Layko explain how any such testimony was prejudicial to Layko.

¶ 68        Layko also argues that Okal's and Duncan's testimony should have been barred because they had not been disclosed as witnesses prior to the sanctions hearing, as requested by Layko's Rule 213(f) interrogatories. Ill. S. Ct. R. 213(f) (eff. Jan. 1, 2018). However, Layko served Rule 213(f) interrogatories only in the underlying action on the merits. Neither party served such interrogatories in connection with the sanctions hearing. Layko's own counsel testified during the sanctions hearing even though he had not been disclosed as a witness prior to the hearing. In any event, Layko's counsel had ample opportunity to cross-examine Okal and Duncan during the hearing, and he did so.

¶ 69        Layko further argues that the trial court erred by admitting uncertified copies of M-OK Distribution's vehicle registration records. However, when the defendants moved to enter those records into evidence, Layko's counsel objected only on grounds of relevancy. He did not argue that the records were inadmissible because they were uncertified. Although he later asked for the

24

certified copies, he did so only after the uncertified copies had been admitted, and he never argued that the records should be barred because they were uncertified. Layko has therefore forfeited that argument.

¶ 70   Finally, Layko argues that the trial court improperly allowed Okal to testify as to the content of a privileged communication between Layko's attorney and a Layko representative. The trial court overruled Layko's objection and ruled that the communication at issue was not protected by the attorney-client privilege because it took place in the courtroom in the presence of other attorneys. The trial court's ruling was clearly correct. Layko cites no authority suggesting otherwise. Nor does Layko argue that it was prejudiced by the trial court's consideration of the communication at issue.

¶ 71                                III. CONCLUSION

¶ 72   For the foregoing reasons, we affirm the judgment of the circuit court of DuPage County.

¶ 73   Affirmed.